## *Ex parte* SAMUEL PRITZ.[1]

1. CONSTITUTION: INTERPRETATION. In the interpretation of a constitution, as in the interpretation of statutory laws, the intentions of those making the instrument should be ascertained and considered.

2. SPECIAL LEGISLATION: AMENDMENT. The Constitution, article 3, Section 30, prohibits the enactment of special laws, either for the incorporation of towns and cities, or for the amendment of acts of incorporation in existence before the adoption of the Constitution.

3. PECUNIARY CORPORATIONS. Article eight, of the Constitution refers exclusively to corporations for pecuniary purposes; and the twelfth Section thereof confers upon the legislature *no power to amend or repeal* laws for the organization or creation of municipal corporations.

4. DAVENPORT: Chapter 88, Laws Seventh General Assembly, (1858,) "an act to amend an act entitled an act to incorporate the city of Davenport, and to amend the several acts amendatory thereto," approved March 20th, 1858, is unconstitutional and void.

### JUNE 22, 1858.

THE petitioner was arrested by virtue of a warrant issued by the police magistrate of the city of Davenport, for a violation of an ordinance of said city. The office of police magistrate was created by an act of the General Assembly, entitled " an act entitled an act to amend an act to incorporate the city of Davenport, and amend the several acts amendatory thereto." Approved Jan. 23, 1857. On the 20th of March 1858, this act to incorporate said city and the several acts amendatory thereto, was further amended by "an act to amend an act, entitled an act to incorporate the city of Davenport,

1 This cause was heard at the argument term at Davenport in April 1858, and the opinion filed at the June term of the same year. It should have appeared in 6 Iowa Reports, but was probably overlooked by the late Reporter. The importance of the questions discussed and determined by the court, demands its publication in this volume.

and to amend the several acts amendatory thereto," and by the fourth section thereof, the office of police magistrate was abolished. The warrant in this case was issued, after this last act had been approved by a majority of the legal voters of said city, as required by the provisions thereof. The petitioner was tried, convicted, and ordered to stand committed until the fine assessed should be paid. Upon his application a writ of *habeas corpus* was issued by this court, to which the officer makes return that he holds the prisoner by virtue of a *mittimus* issued pursuant to the above conviction. He also sets up that the act of March 20th 1858 is unconstitutional and void. Upon this last averment issue is taken by the petitioner, and this is the only question presented by counsel.

*Cook, Dillon and Lindley* and *James J. Lane* for Petitioner.

I. The courts will not pronounce a legislative act void for repugnance to the Constitution, except in a clear case. 2 Peters 252; 12 Wheat. 270; 19 John. 58; 3 Dallas 386; 4 Ib. 309; 2 Iowa 208; 12 S. & R. 339; 2 Yates 493; 8 Watts & S. 386.

II. The court will give a construction that will render the whole act valid. 2 Iowa, above cited.

III. The question is not, does the Constitution *allow*, but does it *permit* the passage of such amendatory acts. 2 Livingston's Law Magazine 121, Judge Black's opinion and the cases there cited.

IV. The Constitution does not expressly nor by clear implication, prohibit the *amendment* of city charters, by the legislature. Const. Art. 3, Sec. 30; Ib. Art. 8, section 1.

*James Grant* and *James A. Buchanan*, contra. [No brief appeared on file with the papers in this case.]

WRIGHT, C. J.[1]—The act of March 20th, 1858, is claimed to be unconstitutional upon the grounds;

---

1 A memorandum appended to the opinion of the court indicates that STOCKTON, J. dissented, but no dissenting opinion appears on file.

*First*—Because such legislation is prohibited by section 30 of Art. 3 of the Constitution.

*Second*—Because it depended for its validity upon the vote of the people.

We shall confine ourselves to the first objection, regarding that as decisive of the case. We are to determine not whether the legislature has the power given to it to pass such laws, but whether this power is withheld. For if not prohibited or withheld, then it is conceded that it would be a legitimate exercise of power.

The 30th section of Art. 3, provides that "the General Assembly shall not pass local or special laws in the following cases." Then follow several cases in which such laws are prohibited, and among others those "*for the incorporation of cities and towns;*" and in the concluding part of the section we have the language: "In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

It is claimed that the prohibition to pass laws for the *incorporation* of cities and towns, does not take away the power to pass laws for the *amendment* of such laws; that the language of the Constitution is to receive a strict construction, and that the case must be clear, decisive and unavoidable, before this court will be justified in declaring an act of the General Assembly void for unconstitutionality. In the interpretation of the Constitution, as in the interpretation of laws however, we are to ascertain the meaning by getting at the intention of those making the instrument. What thought was in the mind of those making the Constitution—what was their intention, is the great leading rule of construction.

Let us see, then, what was the intention in incorporating section 30, of Art. 3, into the Constitution. The ready and obvious answer is, to prevent special or local legislation; to require that the legislature should pass general laws upon all the subjects named and in all other cases, where such

general law could be made applicable.   There can be no question but that it was designed to confine the legislature to general legislation, and leave the people in their municipal capacity to organize and carry on their government under such general laws.   If this be so, then to say that the legislature may not pass a law to *incorporate* a city, but may to amend an act of incorporation in existence before the adoption of the constitution, or charters formed under the general law, would make this provision of the constitution practically amount to nothing.   For if they may amend, they may to the extent of passing an entire new law, except as to one section.   Or they may at one session amend half the law, and at the next the other half, and thus the plain and positive prohibition of the fundamental law would be evaded.   By such a construction, the evil sought to be remedied would continue, if possible, in a more objectionable form.   We think the intention was, to require the legislature to pass general laws upon this subject, under which the towns and cities of the State, could frame their articles of incorporation, and amend them at any time, in any manner not inconsistent with the constitution, or the general laws.   It was designed to leave these matters with the people composing the corporation, instead of consuming the time of the legislature in the consideration of local and special laws.

It is said, however, that the language used does not express this intention, and that we must look to the language in order to ascertain the intention.   Let us consider the subject matter of this section and see if this position is correct. If the legislature. can pass no special law for the *incorporation* of a city or town, then what special law would there be to which the power to *amend* could apply ?   It certainly will not be pretended that the power is given to amend that which they are prohibited from passing.   To say that the legislature may not pass certain laws, and yet claim that they are not prohibited from amending the laws they cannot pass, would be to use an argument, the statement of which is its own refutation.   Indeed, this is not claimed by those who

insist that the present act is valid; but the position is, that the power to amend special acts of incorporation passed before the taking effect of the present constitution, is not prohibited by the language used. To this it may be answered, *first*, that under this constitution, every act for the incorporation of a city or town within this State, passed prior to March, 1858, would become the subject of special legislation, and as to these the legislature could, either at the same or any two sessions, practically pass a special law for these incorporations. Suppose the legislature had passed an act amending the act incorporating the city of Davenport, in which every section was changed except one, or suppose all but the first section had been stricken out and an entire new law had been substituted, would it be claimed that this would not be an infringement upon the prohibition contained in the section under consideration? And yet, if the power to amend is not withheld, we see no limit to the power to amend. If one section or one line may be amended, then every section and every line may be.

In the *second* place, what reason or object could there have been in retaining the power in the legislature to amend previous acts of incorporation, and withholding it as to all subsequent acts? What reason, in the nature of things, is there for giving cities or towns previously incorporated, the privilege to apply to the legislature for an amendment, and recognizing the power of the legislature to act in such cases, and yet depriving those incorporated subsequently of the same privilege? It certainly seems to have been the clear intention, and to be in perfect accordance with the spirit and policy of the instrument, to place all such incorporations upon the same ground, and to give to the legislature the same rule in making laws for their action and government.

But in the next place as to such laws, it is provided that they shall have a uniform operation throughout the State. Take the several acts for the incorporation of cities and towns passed previous to the adoption of the present con-

Ex parte Samuel Pritz.

stitution, and if the legislature may amend them, then they may amend, so as to give to each city or town a different charter or act. If so, such acts would not have a uniform operation, but a special and different law might be given to each. But again; to say that the prohibition to pass laws for the incorporation of a city, does not include a prohibition to *amend*, we think, is narrowing the language used, to an unwarranted extent. When we speak of an act or law to incorporate a city, it may be conceded that we are understood to refer to a law *creating* the corporation. But if a law is passed that changes or modifies the act creating such law, it is as much for the government of the corporation as was the original act; and it would certainly seem that if the legislature cannot create, neither can they legislate so as to change that which was previously properly created. And finally, we suggest the query, whether, if this species of legislation may be tolerated, then may not the legislature grant to the citizens of one city or town, privileges and immunities, which, upon the same terms, do not belong to all the citizens of other cities or towns. If so, then is not such legislation prohibited by sec. 6, Art. 1 of the constitution. Without pronouncing upon the effect of this article, in the present case, we merely suggest the inquiry and leave it.

If, however, we shall be wrong in the above views, the writer of this opinion entertains no doubt but that this act is void under the concluding clause of sec. 30, Art. 3. Can a general law be made applicable to such a case? If so, the general law, having a uniform operation throughout the State must be passed. Upon this subject it would seem that there could be but little doubt. The legislature can pass a general law under which cities and towns may hereafter incorporate, and under which they may amend their articles of incorporation. This the legislature can do, and are bound to do, by the express language of the section. If so, then it would seem to be a less difficult task to pass a general law, under which incorporations already in existence could amend their articles, or charter.

It is claimed, however, that the legislature is the sole judge whether a general law can be made applicable, and if no such law is passed, the courts cannot undertake to say that it can be, or to say that a special law is void. To this, adopting to some extent the reasoning made up by the Supreme Court of Indiana, in the case of *Thomas* v. *The Board of Com's*, 5 Porter, 4, made under a constitutional provision exactly similar to ours, three positions may be taken.

And *first*, if this position is correct, then this clause in sec. 30 of our constitution has no vitality; nor is there any reason why it should have a place in that instrument. It would impose no restriction, nor would it confer any power which the legislature would not have in the absence of such a provision. If the legislature may enact a special or local law *ad libitum*, in any case not expressly enumerated, this court would be deprived of all authority to call in question the correctness of a legislative construction of its own powers under the constitution.

In the *second* place; while this court may not point out the features of such a general law, yet when we apply the constitution, its object and intention to the case before us, we do know that such a general law can be made applicable. Any one at all acquainted with the powers of legislation, by attempting it, will certainly find that such a law can be made. In the proper exercise of judicial power, if we believe this, as we do, it is our duty to declare the special law void.

But finally, a speculation upon this last proposition is unnecessary, for a general law upon this subject has been passed, and thus all room for doubt is removed. Laws of 1858, pp. 343, 390. A general law being passed, the question of the practicability of passing such a law is no longer an open one. But it is claimed that the power to amend such laws is recognized and given by sec. 12 or Art. 8 of the constitution. Section one of this article provides that "no corporation shall be created by special laws; but the Gener-

Ex parte Samuel Pritz.

al Assembly shall provide by general laws for the organiza-
tion of all corporations hereafter to be created, except as
hereinafter provided." Sect. 12 provides that "subject to
the provisions of this article, the General Assembly shall
have power to amend or repeal all laws for the organization
or creation of corporations, or granting of special or exclu-
sive privileges or immunities, by a vote of two-thirds of each
branch of the General Assembly, and no exclusive privi-
leges, except as in this article provided, shall ever be
granted."

This article we think has reference exclusively to corpo-
rations for pecuniary profit, and for the most part to banking
corporations. This we think is very evident from the entire
language of the article. And as to these it is expressly
provided that they shall not be created by *special* laws. But
the words, "subject to the provisions of this article," in
sec. 12 would seem to point unmistakeably to the object and
purpose of this article. The power to amend laws for the
organization or creation of the corporations in said article
contemplated, is given, but no amendment can be made that
shall legalize the suspension of specie payments by banking
institutions, that shall exempt the property of corporations
for pecuniary profit from taxation in any other or greater
extent than that of individuals, that shall allow a political or
municipal corporation to become a stockholder in a banking
corporation, directly or indirectly, or that shall provide for
anything other than specie as the actual basis of a State
Bank. These and other provisions of this article, show what
is meant by the words, "subject to the provisions of this
article," and show conclusively to our minds that the power
to amend given by sec. 12, relates to laws for the creation of
the corporations therein contemplated, and not to municipal
corporations, or those for other purposes than pecuniary
profit. This article was intended to prescribe and limit the
power of the General Assembly in relation to banking insti-
tutions and other corporations for pecuniary profit, and the
whole subject of special or local legislation as to municipal

corporations is withdrawn from the law-making power, by the other provisions of the constitution. And in addition to this same argument made as to sec. 39, Art. 3 is applicable here; for if the legislature has no power to pass a law for the incorporation of a city or town, it would be unreasonable, to say the least of it, to hold that by sec. 12, Art. 8, the power is given to amend a law that they could not pass. If the provisions of the constitution were observed, there would and never could be any law for them thus to amend. If, however, this article does not apply alone to corporations for pecuniary profit, then the utmost that can be claimed is, that the General Assembly may amend all laws for the creation or organization of corporations—that is, the *general* laws, under which these incorporations may be formed. This view, though not necessary, nor as we think warranted from the language of the entire section, is to our minds more reasonable, and makes the different provisions of the constitution more consistent than to say that they may amend special acts of incorporation, whether passed before or after the adoption of the constitution. And we need scarcely say that the power to amend given in this article, cannot refer to the charter or articles of incorporation that a city may make for itself under the General Assembly. For, in the first place, the exercise of such a power would defeat the plain policy and evident spirit of the constitution, in leaving all such matters to what may be termed a home or local legislature. And in the next place, such charter or articles of incorporation can, in no proper sense be called a *law* or *laws* within the meaning of the constitution.

We conclude, therefore, that the legislature had no power to pass the act of March 20th, 1858; that the office of police magistrate is not abolished; that the petitioner was, so far as relates to the power of said magistrate, to act properly in the custody of the Marshal, and to this custody he will be remanded.