## BAKER & GRIFFIN v. THE STEAMBOAT MILWAUKEE.

1. CONSTITUTIONAL LAW: DUBUQUE CITY COURT. Chapter 16, Laws of 1858, entitled "An act to repeal an act revising and consolidating the laws incorporating the city of Dubuque, and to establish a City Court therein," approved February 10th, 1858, is within the constitutional prohibition of special legislation, and is void, following *ex parte Pritz*, 9 Iowa, 30, and *Davis* v. *Woolnough*, Id., 104.

2. SAME. The City Court of Dubuque is an inferior court, within the meaning of Art. 5, § 1 of the Constitutions of 1846 and of 1857, and the act creating it (§§ 28–36, chap. 210, Laws 1857) was not repealed, either by the Constitution of 1857 or the Revision of 1860.

3. REPEALS BY IMPLICATION. Repeals by implication are not favored by the courts.

4. CONSTRUCTION. In the construction of statutes the courts will ascertain, as nearly as possible, the design of the Legislature and give it effect.

5. WAIVER BY ANSWER. The defendant waives any error in the ruling of the court to his demurrer to the petition, by filing an answer to the petition.

6. EVIDENCE IN THE RECORD. The Supreme Court will not review the finding of the court below, on a question of fact, when the evidence submitted to the court below is not embraced in the record.

7. PETITION AGAINST A BOAT. In an action against a steamboat, it is not necessary to allege in the petition that the boat was within the limits of this State at the date of the commencement of the action.

8. ACTION AGAINST BOATS: JURISDICTION. In actions against steamboats the service of the warrant confers jurisdiction upon the court.

9. SAME: LOCUS. It matters not where a contract with a steamboat is made, if violated within the waters of this State, the courts of the State will afford the proper remedy if the boat can be seized under a warrant properly issued.

10. JURY: CHALLENGE TO THE PANEL. The clerk of the City Court of Dubuque issued a *venire* for *fifteen* instead of *twenty-four* jurors for the panel for a term. *Held,* that a challenge to the panel should have been sustained.

11. CONTRACT OF AFFREIGHTMENT. The rights of partners under contracts of affreightment discussed.

12. ESTOPPEL: AGENCY. A common carrier after contracting with a party, as an agent of a consignor, cannot deny as against such consignor the authority of the agent.

13. CONTRACT: CONSIDERATION. The payment of freight in advance is a sufficient consideration to support a change in the original contract of affreightment.

*Appeal from Dubuque City Court.*

FRIDAY, DECEMBER 5.

THIS action was commenced in the Dubuque City Court to recover the value of a reaping machine, which, it is claimed, the defendant failed to deliver, under a contract of affreightment to carry a lot of reaping machines from Dunleith, Illinois, to McGregor, Iowa. The freight was paid at Dunleith in full for the whole lot; but the defendant, it is claimed, failed to deliver the machine in controversy to the consignee at McGregor. The defendant, after appearing specially and pleading to the jurisdiction of the court, and to its jurisdiction over the defendant, answered, *de bene esse*, denying the allegations of the petition, and averring that the contract for carrying and delivering said reapers was with the Illinois Central Railroad Company, evidenced by certain bills of lading, and that the machines were to be delivered to one H. A. Goff, at McGregor; that the defendant had in good faith performed said contract; that the consignee was not present when said reapers were landed, to receive them, and did not reside at McGregor, and could not, with reasonable diligence, be found; that defendant, as in duty bound and pursuant to the uniform and general custom at McGregor and other ports and landings on the Mississippi river, left said reapers in charge of Safford and Rogers, who were responsible warehousemen at McGregor, where they have at all times since been ready for the plaintiffs. The plea to the jurisdiction was overruled. A motion for continuance was also overruled. The defendant then filed a challenge and objections to the panel of the jury, which were also overruled. Trial by jury, verdict and judgment for plaintiffs. Motion for new trial overruled and defendant appeals.

Baker & Griffin v. The Steamboat Milwaukee.

*Wilson, Utley & Doud* for the appellant.

1. The court should have sustained defendant's plea to the jurisdiction of the court. Rev. of 1860, §§ 2663, 2653–2673, 2631–2634; Const. 1857, Art. 5, § 1; *The District Township of The City of Dubuque* v. *The City of Dubuque*, 7 Iowa, 262; *Warner* v. *The People*, 2 Denio, 272; *Whiting & Whiting* v. *The City of Mount Pleasant*, 11 Iowa, 482.

2. The court had no jurisdiction over defendant. *Newcomb* v. *The Steamboat Clermont*, 3 G. Greene, 295; *Ham* v. *The Steamboat Hamburg*, 2 Iowa, 460; *Lessees of Paine* v. *Morland*, 15 Ohio, 435; *Bowen et al.* v. *Gilkison et al.*, 7 Iowa, 503; *Pittman & Bro.* v. *Searcy*, 8 Id., 352; *Stacy & Thomas* v. *Stichton & Co.*, 9 Id., 399; *Stadler, Bro. & Co.* v. *Parmelee & Watts*, 10 Id., 23; *Torbert* v. *Tracy & Murray*, 12 Id., 20.

3. The court erred in overruling defendant's application for a continuance. ·

4. The court should have sustained the challenge tǒ the panel of the jury. Chap. 210, § 33, Laws of 1857; *Gardner* v. *Turner*, 9 John., 260; *Wright* v. *Stuart*, 5 Blackf., 119; *Mitchel* v. *Likens*, 3 Id., 258; *Jones* v. *The State*, Id., 37; *Pringle* v. *Huse*, 1 Cow., 432.

5. The court should have excluded the evidence of Blanchard.

6. The court indirectly charged the jury as to the facts. *Savery* v. *Busick*, 11 Iowa, 487; *Hawes* v. *Carver*, 3 Iowa, 257; *Russ et ux.* v. *The Steamboat War Eagle*, 9 Id., 374.

*Bissell, Mills & Shiras* for appellee. (No argument on file.)

BALDWIN, C. J. — I. Did the court err in overruling the defendant's plea to its jurisdiction? Under the first assignment of error the counsel of appellant discuss the validity of the act of the Legislature, approved February 10, 1858 (see Laws of 1858, page 20), repealing the act of 1857,

which established the City Court in the city of Dubuque. We regard the invalidity of this act as settled by this court in the cases of *ex parte Pritz*, 9 Iowa, 30, and *Davis & Bro.* v. *Woolnough*, Id., 104.

It is next insisted that in pursuance of the Constitution the Revision of 1860 has repealed the act of 1857, and abolished said court, at least so far as its civil jurisdiction is concerned. It is claimed that under the Revision the whole judicial power of the State is invested in the Supreme District, County and Justices' Courts; that § 2663 provides that the District Court shall have a general supervision over all inferior courts, &c., and it provides no other remedy; that provisions are made for other courts—their jurisdiction, powers, duties, rules, terms, judges, clerks, officers—but none for the City Court; that the Supreme Court has appellate jurisdiction over all judgments of any of the District Courts, and a general supervision over District Courts, to prevent and correct abuses, but not over the City Court. We do not understand the counsel of appellant to assume that the act of the Legislature, establishing the City Court, is invalid, but as claiming that if not repealed by the express provisions of the act of 1858, it is repealed by the Revision of 1860, by implication; that the Constitution having expressly made the creating, confirming and vesting of judicial authority, except as to the Supreme and District Courts, a subject of legislative power, and that the Legislature, by the enactment of the Revision, vested the judicial power not then vested by the Constitution. Article 5, section 1, of the Constitution in force when this court was established, provided that the judicial power of the State should be vested in a Supreme Court, District Court and such inferior courts as the General Assembly should, from time to time, establish. The act of 1857, creating the Dubuque City Court, established an inferior court under this constitutional provision, and this court

has been recognized as an inferior court regularly established by the General Assembly. See *Hetherington* v. *Bissell et al.*, 10 Iowa, 145.

The provision of the new Constitution is similar to the old one with reference to the power of the legislature to establish superior courts. It provides also (§ 1, article 12) that the General Assembly shall pass all laws necessary to carry the Constitution into effect; also, that all laws in force when it was adopted and not inconsistent with its provisions should remain in force until they should expire or be repealed, (§ 2, article 12.) This act then in force was not inconsistent with the provisions of the Constitution. On the contrary it was such an act as is therein indicated that the legislature had the power to enact. Nor was it necessary for the legislature · to pass any act in relation thereto to carry any of the provisions of the new Constitution into effect. This law therefore stood upon the statute book as one not inconsistent with the provisions of the Constitution as one in reference to which no further legislation was necessary — a law local in its character — complete in its provisions for carrying out the design of its creation. If it can be avoided, no court will conclude that a statute is repealed by implication. Such repeals are not favored. Effect will be given by courts to several statutes upon the same subject if possible. See *Casey* v. *Harned*, 5 Iowa, 1, and cases there cited. It is a rule well settled that courts in giving a construction to statutes should aim to arrive at the design of the legislature as nearly as possible. We certainly have reason to believe that if the legislature had designed to repeal the act establishing a court that had assumed the importance the court in question had when the Revision was adopted it would not have indicated its intention by some express language. When the Revision was enacted the jurisdiction of this court was already defined. Its powers, duties, terms, judges and other officers were

already provided for — a mode was already provided for preventing and correcting its abuses — none of which were inconsistent with the Constitution then in force. Hence, can the much complained of silence of the legislature, in not referring to this court, be accounted for.

II. It is further submitted· under this assignment that the court erred in overruling the plea to the jurisdiction over defendant. It is claimed that it does not appear from the petition or otherwise that the defendant was within the jurisdiction of said court or any court of this state, or that it was navigating the waters of this state at any time, or was ever in or found in the waters of this state, or that the alleged contract was made or broken in this state. Was it necessary that it should be averred in the petition, that the defendant was within the jurisdiction of the courts of the state at the time the suit was commenced? The record shows that this plea was overruled. It must have been treated by the court as a demurrer, and if so we are inclined to think that the defendant by answering over and going to trial, waived this question as to the sufficiency of the averments therein. If, however, it was treated as a plea and issue joined thereon, we then determine this objection against the appellant upon the ground that the evidence upon which the court found for the plaintiff is not before us, and we cannot therefore say that it was wrong in its conclusions. Treating the plea, however, as a demurrer, and conceding that the defendant has waived nothing by pleading over and going to trial, we think it not necessary to aver in the petition that the boat at the time the suit was commenced was within the jurisdiction of the state. This is a proceeding *in rem*, and it is the service of the warrant that brings the property within the jurisdiction of the court. The breach of the contract of affreightment creates the right, but no lien attaches until the boat is seized. The court need not look to the petition to determine its

jurisdiction, or rather to ascertain whether the property is within the state. If a cause of action is stated and sworn to this will authorize the issuance of the warrant. The return of this warrant served by the proper officer in a legal manner will sustain the jurisdiction of the court. The counsel of appellant assimilates this proceeding to that under a writ of attachment, and claims that like rules should govern in determining this question of jurisdiction. Conceding it, is it necessary where a party seeks to attach the goods of an absconding debtor, upon the ground that he is disposing of his property with the intention to defraud, &c., to state in the petition that the debtor has property within the jurisdiction of the court from whence the writ is to issue? Certainly not. When the writ issues, and the property is seized, the jurisdiction is complete.

It is urged that the petitioner does not show that the alleged contract was made or broken in this state. The petitioner avers that the defendant agreed to deliver the property at McGregor, and this he failed to do. The breach of the contract was within this state and it was here that the lien under the statute inured to the plaintiff; and without further examination or elaboration we are prepared to hold, that under the broad provisions of our statute in relation to boats, that it matters not where the contract is made. If violated within the waters of this state, here the injured party can have his remedy, if he can have the boat seized under a warrant properly issued.

III. The overruling of defendant's application for a continuance is next assigned as error. This was, under the circumstances, purely a question of discretion with the exercise of which we do not think proper to interfere.

IV. The fourth assignment is, that the court erred in disallowing and overruling the challenge and objections made to the panel of the jury. The statute under which this court is established requires that, " in order to provide

juries for said court, the clerk thereof at least ten days prior to the commencement of each term, shall issue a venire to the marshal, who shall within five days thereafter summon twenty-four jurors, qualified electors of said city and otherwise qualified to serve as jurors in the courts of this state to appear in said court," &c.

There were only fifteen jurors required by the venire issued by the clerk to the marshal, and only fifteen jurors were summoned for the term at which this cause was tried. Causes in this court are to be tried under the rules prescribed for the trial of causes in the District Court. Sections 3027–3030 of the Revision of 1860, give to either party the right of challenge to the panel. It can be allowed only upon the ground that there has been a material departure from the forms prescribed by statute in respect to the drawing and return of the jury. It is upon this ground that the defendant based his challenge. The law directs that the clerk shall issue a venire for twenty-four jurors. It is conceded that for this term he issued his venire for but fifteen. Is this not a material departure from the requirements of the statute? It is hardly worth while to reply to the position of appellee that this statute in relation to the number of jurors to be summoned is merely directory, and the failure of the clerk to do his duty would be no objection to the panel, and that such an omission did not prejudice the rights of the defendant. The defendant had a right to a trial by a jury summoned in a lawful manner. The law says that he shall have the right to have his jury drawn from a panel of twenty-four good men summoned by the clerk for that purpose; and to deny this does not give him a trial in the manner prescribed by law. If the court or clerk has the power to disregard this requirement and summons but fifteen, why may they not, with like consistency summons ten, five or but one? and when a cause is ready for a jury call in talesmen? The law provides that

if a jury cannot be obtained otherwise, talesmen may be summoned by the marshal from the city or the bystanders. This, however, cannot be until an effort has been made to obtain a jury in the manner prescribed by law. It will not do to give to a party a right to challenge and then say to him that he is not prejudiced by the denial to him of such right? Nor do we think it will do to say, that because the defendant did not, after his challenge to the panel was overruled, object to jurors that tried the cause, he was not prejudiced. After his challenge was denied, he was compelled to go to trial with a jury selected from the fifteen. He perhaps did not desire to object to any thus drawn, as their places might have been supplied with jurors more obnoxious to him than any of the fifteen. The cases of *Suttle* v. *Batie*, 1 Iowa, 141, and *Clausen* v. *La Franz*, 1 Id., 226, are not in point and do not sustain the rulings of the court below. The statute in force when these cases were tried did not give either party a challenge to the panel in a civil case. Nor does it appear that the challenge was made in a proper form or that it was not afterwards waived. There may be some departures from the forms prescribed in drawing a jury which are directory and their omission becomes immaterial and that would not justify the court in sustaining an objection to the panel; but where there is such a palpable assumption of power by the clerk as in this case, we think the objection should be sustained.

V. It is next claimed that the court should have excluded the testimony of the plaintiff's witness, M. L. Robinson. The reapers were shipped from Freeport, Illinois, by railroad to Dunleith, and were taken by the defendant from Dunleith to McGregor. The first contract of affreightment was made with the railroad company running in connection with the Dunleith and Minnesota Packet Company, the defendant being one of the packets owned by said company. When the reapers arrived by

railroad at Dunleith, Robinson, the witness and agent of plaintiff, was there—went to the agent of the packet company, Mr. Blanchard, examined the freight book—told the said Blanchard that the charges for freight were too much by eight dollars, and that the consignee's name at McGregor was Goble instead of Goff—that he desired to pay the freight then, as the agent of plaintiffs, and to send a boy of Mr. Goble's with the reapers to McGregor to see to the delivery of all the parts thereof. The agent of the company and of defendant agreed to make the proper deduction on the freight, if Robinson would pay the same in advance. This was done, and a receipt for the freight given. It does not appear that the agent of the defendant changed the bills of lading, or corrected thereon the name of the consignee, or that the agent assented to deliver the reapers to the son of Goble or to Goble himself. The son testifies that he went aboard the boat; that he paid his fare to the clerk; that he represented to the clerk that he was the son of the consignee of the reapers, and would receive the freight, but that the clerk did not pay any attention to him; that the reapers were put out at the usual landing at McGregor; that the consignee was there in a few minutes after the boat left, but the reapers were put under the charge of the warehouseman. The evidence shows that the warehouseman refused to deliver the reaper in controversy, unless their charge of $5.00 was paid by the plaintiff for receiving said freight. This the plaintiffs refused, and brought this action to recover the value of the reaper thus detained. An important question in the case is, whether the original contract of affreightment was changed by Robinson as agent of the plaintiffs, and Blanchard as the agent of the railroad and packet company at Dunleith? The contract of the defendant with the railroad company was evidenced by certain bills of lading, one of which was for the consignee, one for the con-

signor, and one left with the boat. If this contract was not changed by the subsequent one with the witness, the defendant could know no consignee except the one named in the manifest; and if he, or some person for him, was not at the landing at McGregor, after due notice of the arrival of the boat to receive the freight, the defendant had the right to place the freight in the charge of responsible warehousemen, and the plaintiffs were liable for a reasonable compensation to them for receiving the same. On the other hand if in consideration of the payment of the freight at Dunleith, the defendant agreed to deliver the reapers to Goble, or to his son for him, being satisfied that there was a mistake in the name of the consignee, and the son was on board the boat with the reapers, and, at the landing where they were put ashore, the defendant should have delivered them to the boy, and not placed them in the charge of the warehousemen. It is claimed that Robinson's evidence, by which plaintiffs seek to establish this subsequent parol contract, should have been excluded upon the ground that it fails to show that there was any consideration for the new agreement, and that it does not appear that it was made subsequent to the original written contract. Either of these questions were for the jury to determine. It becomes a question of fact, whether the payment of this freight at Dunleith was of such advantage to defendant as would import a sufficient consideration for changing the contract. It is claimed, that as the defendants were common carriers, they had a lien for the freight, and, as they were thus secure, it made no difference whether the freights was paid at Dunleith or McGregor. This position is controverted by the fact that, notwithstanding the lien, the defendants considered the advance payment of sufficient advantage to them as to deduct one-eighth of the amount of the freight bill. While we do not undertake to say that the evidence is sufficient to

show that there was a change in the contract, yet it was proper evidence to go before the jury, and the court did not err in its admission.

VI. It is submitted that the court erred in its charge to the jury. The portion of the charge to which the appellant most strongly objects is wherein the court says, "that the defendant could not bargain with the witness, Robinson, or agent of the plaintiffs, and receive his money for freight, and then turn around and deny his agency;" and "that the receiving freight in advance was a sufficient consideration to render any change on the original bill of lading binding on the parties, if they find such was the fact."

It is claimed that the court assumed and charged as a fact that defendant did bargain with the witness, Robinson, as the agent of plaintiffs, and received his money in payment of freight. Taking this portion of the charge unconnected with the rest of the instructions, it might seem objectionable. But when it is recollected that the court charged the jury fully as to this subsequent parol contract, and especially what was required of plaintiff to prove that it was made, we cannot say that this is an assumption by the court, that the bargain was established. The substance of the ruling is, that, if under the rules laid down by the court, the jury should find a new contract was made, then they were to apply the law as given above. It is insisted that the court erred in charging as the law, that the defendant could not receive the money for freight of said Robinson, and deny his agency to make a contract to change the consignment and terms of the bills of lading.

The act of the agent of defendant, in receiving the price of freight recognized the said Robinson as the agent of plaintiff. The freight was paid as it is claimed upon the new agreement, and if the jury found this to be the fact, then we think the defendant was bound to take notice of

the conditions of the new contract, and should have acted accordingly. The defendant recognized Robinson as the agent of the plaintiff, and was advised by him that there was no mistake in the name of the consignee; that Goble was the person to whom the reapers were shipped; that it was not Goff; that Goble's son was on the boat, and authorized to receive the freight at McGregor. Under the circumstances, we cannot say that the court erred in its charge. · The court correctly stated the law in relation to the obligation of the defendant as common carriers, as applicable to either contract, and left it to them to say whether the special contract was established. ·

VII. The charge of the court, in reference to the custom of the country, was clearly and correctly stated.

VIII. The charge of the court being correct, the modification of those asked was not error.

IX. It is not important to determine whether the verdict of the jury was against the weight of evidence as a new trial is granted upon the ground that the objection to the panel should have been sustained.

Reversed.