348 SUPREME COURT OF IOWA,

The City of Davenport v. The Mississippi and Missouri Railroad Company.

## THE CITY OF DAVENPORT v. THE MISSISSIPPI AND MISSOURI RAILROAD COMPANY.

### I. Per CURIAM:

1. RAILROADS: MUNICIPAL POWER OF TAXATION. The city of Davenport has no power, under section 1, article 5, of its charter, to levy taxes for municipal purposes upon the rolling stock of a railroad company, which has its principal place of business and a portion of its road within the corporate limits of said city, such rolling stock being used by the corporation along the line of the road beyond as well as within the limits of the city.

2. SAME: COURT DIVIDED. The Supreme Court being equally divided upon the question as to the power of the city of Davenport to levy taxes upon the real property of a railroad corporation situated within its limits, the judgment of the court below stands affirmed by operation of law.

### II. Per LOWE, J.:

1. RAILROADS: TAXATION. Section 16 of chapter 173 of the Laws of 1862, is constitutional and valid, and prescribes the only method and purposes by and for which the property of a railroad corporation may be taxed. It does not confer upon municipal corporations the power to tax either the real or personal property or the gross earnings of railroads for general municipal revenue purposes; neither does it abridge the powers, when conferred on such corporations by their charters, to assess special charges against particular property for the construction of sidewalks or other improvements intended for local benefit rather than general convenience.

2. TAXATION: METHOD MAY BE VARIED. It is competent for the Legislature, in its discretion, to vary the rule or method of taxation, in regard to different kinds of property.

3. SAME: ACT CONSTITUTIONAL. Chapter 173, Laws of 1862, is not inconsistent with section 7, article 7 of the constitution of 1857.

4. SAME. It is competent for the Legislature to tax the property of railroad companies through their gross earnings, in the manner prescribed by chapter 173 of the Laws of 1852.

### III. Per COLE, J.:

1. RAILROADS: POWER OF TAXATION. The power of taxation has its foundation in the Legislature; and the power to tax the property of a railroad corporation, by an assessment of its value, or otherwise than in the manner prescribed by section 462, Code of 1851, or chapter 173, Laws of 1862, has never been conferred by legislative authority. Without a grant of power by the Legislature, a municipal corporation cannot levy taxes on such property.

IV. Per DILLON, J.; WRIGHT, Ch. J., concurring:

1. POWER TO TAX REAL PROPERTY. Under section 1, article 5 of the charter, and chapter 45 of the Revision of 1860, the municipal corporation of Davenport has the power to levy taxes upon the real estate of railroad corporations, when such property is situated within its own limits. This right is not affected by section 16, chapter 173, Laws of 1862, as that act was not intended to have any application to municipal corporations.

*Appeal from Scott District Court.*

MONDAY, JUNE 13.

THIS is an amicable suit, founded upon an agreed state of facts, the purpose of which is to obtain a judicial determination of the question, whether the plaintiff for the year 1862 possessed the power to levy and collect a tax upon the property of the defendant for general municipal purposes, that is to say, upon the road bed, depot grounds and buildings situated within the city limits, and the rolling stock belonging to the road or company. The facts agreed upon essential to the consideration of the question submitted are, that the city assessment of the depot grounds and buildings was fixed at $150,000; the road bed within the city, at $80,000; all the rolling stock used in operating the road, 170 miles, $129,000, yielding a tax at the rate per cent levied of $2,513, for the collection of which a warrant was placed in the hands of the city marshal. That said railroad company kept its principal business office in the city of Davenport; that the locomotives, passenger and freight cars thus assessed and taxed for city purposes, were all the rolling stock which said company had to operate their entire line of road; that the same is used by the company on and along the whole distance of their road at the various stations and towns upon it, as necessity requires, the engines, cars, &c., sometimes remaining for passengers and freight at Iowa City, Muscatine, Washington, and other places, as well as Davenport.

The City of Davenport v. The Mississippi and Missouri Railroad Company.

Upon these facts, the Court below held, and so decided, that the city had the power to levy and collect a tax for the purposes of a city revenue upon the road bed, depot grounds and buildings within the limits thereof, but not upon the rolling stock of the road, the same not being, in the judgment of the Court, situated within the city in the proper meaning and sense of the law, so as to subject it to a municipal tax. To this decision both parties except, and from which both appeal.

*Cook & Drury* for the defendant and appellant.

Two questions are presented for the consideration of the Court.

1st. Under the law, as it was in August, 1862, can the city of Davenport levy a tax for revenue purposes on the property, real and personal, of the railroad company?

And if so,

2d. Can it assess it as property, or must it not levy the tax on the income or earnings, as specified in the law of 1862.

We take the position that the railroad company was not subject to a tax for revenue purposes for the year 1862, and both questions will be considered together, as the authorities to which we may refer will, in the same case, cover both questions. Session Laws of 1862, § 16, p. 227; Charter of the City of Davenport, § 1, art. 5, approved February 5th, 1851.

A city may have power to levy a tax, to build sidewalks, or pave and grade streets in front of property, without the power to levy a tax for revenue on the same property. This distinction was not clearly presented. *The Burlington and Missouri River Railroad Company* v. *Spearman et al.*, 10 Iowa, 125: see *The Mayor, &c., of Baltimore* v. *Green Mount.*, 7 Md., 517; *The City of Baltimore* v. *The Society for establishing useful Manufactures*; 4 Zab., 386; *Lefevre* v.

*The Mayor, &c., of Detroit*, 2 Mich., 586; *In the matter of the Mayor, &c., of New York*, 11 Johns., 77; *McBride* v. *The City of Chicago*, 22 Ill., 573; *The City of Peoria* v. *Kidder*, 25 Ill., 351; *The Town of Mt. Pleasant* v. *Kost*, 29 Ill., 490.

The act of 1842 is constitutional. *Faxton* v. *McCosh*, 12 Iowa, 530; *Tallman* v. *The Treasurer of Butler County*, Id., 531; *The City of Davenport et al.* v. *The Mississippi and Missouri Railroad Company*, Id., 539.

As to both the constitutionality of the law and its scope and operation, we cite the following authorities: *The Milwaukee and Mississippi Railroad Company* v. *The Supervisors of Waukesha County et al.*, 3 Am. Law Reg., 679; *The Ontario Bank* v. *Bunnell*, 10 Wend., 195: *The City of Buffalo* v. *Le Coutreaux*, 15 N. Y., 451; *The State Bank of Indiana* v. *The City of Madison*, 3 Ind., 43; *Gardner, Assessor*, v. *The State*, 1 Zab., 557; *The Illinois Central Railroad Company* v. *The County of McLean et al.*, 17 Ill., 291; *The New York and Erie Railroad Company* v. *Sabin*, 26 Pa. St., 243; *The Case of the State* v. *Beng et al.*, 2 How., 80; *The Camden and Amboy Railroad Company* v. *Hillyas et al.*, Id., 11.

We claim that if the law of 1862 does not govern and bind the city, then one of two propositions must follow: either:

1st. That the property of railroad companies is to be taxed through the shares of the stockholders; or,

2d. There is no law in the State of Iowa authorizing the taxing of railroads.

The railroad company does not reside in Davenport, and its personal property, if taxable at all, is not all taxable in Davenport. *The Bangor and Piscataqua Railroad Company*, 21 Me., 533; *Baldwin* v. *The Mississippi and Missouri Railroad Company*, 5 Iowa, 518; *Bristol* v. *The Chicago and Huron Railroad Company*, 15 Ill., 436.

*D. L. Shorey* for the plaintiff and appellee.

The property of railroad companies is taxable. It is not claimed by the defendant that this class of property is wholly exempt from taxation; but that the effect of chap. 173 of the acts of the ninth General Assembly is to modify the charter of the city of Davenport so as to take away the right in the city to tax this species of property.

The title of this act is, "An act to amend chapter 45 of the Revision of 1860, being an act in relation to revenue."

Chapter forty-five relates exclusively to revenue for State and county purposes. The amending act also relates exclusively to revenue for State and county purposes.

Section 16 of the act of 1862 provides that railroad companies shall be taxed one per cent on their gross receipts— one half of this tax to be apportioned to the several counties through which the road runs; and the other half to be retained by the State. And it is further provided that this act "shall be in lieu of all taxes for any and all purposes on the road bed, track, rolling stock and necessary buildings for operating their road."

The obvious construction of the phrase "all purposes," requires that the meaning of the phrase should be limited to the general purposes expressed in these acts. And we have seen that the entire purport of both acts relates to revenue for State and county purposes. *The Burlington and Missouri River Railroad Company* v. *Spearman et al.,* 12 Iowa, 112.

The new Constitution requires that all laws shall be general and of uniform operation (art 2, § 30), and that the property of all incorporations for pecuniary profit shall be subject to taxation the same as individuals (art. 8, § 2.) The old Constitution was different, and the laws of 1851 and 1858 were enacted under and construed with reference to it.

The defendant is an inhabitant of the city of Davenport, and its personal property is there taxable. Rev., 1860, ch. 3; *Armstrong* v. *Pierson*, 5 Iowa, 318; Ang. & A. Corp., § 440; *The Ontario Bank* v. *Bunnell*, 10 Wend., 186; *The City of Davenport* v. *The Mississippi and Missouri Railroad Company*, 12 Iowa, 547.

LOWE, J.—The judge making this decision below, is now a member of this Court and adheres to his former opinion, having with him the concurrence of one other member of this Court, whilst the two remaining members are of the opinion that such power is wanting and cannot be exercised in the manner proposed. The effect of this division of sentiment is to affirm the judgment below. As the Court, however, unite in holding that the plaintiff has no power to tax the rolling stock of said company for revenue purposes (although upon different grounds), it will be necessary to overrule the plaintiff's appeal, for which we assign the following reasons, which may be taken as alike applicable to the road bed and depot grounds, so far as the writer of this opinion, and one other member of the Court are concerned.

*First.* We say that the rolling stock of a railway is part and parcel of the road itself. The machinery by means of which it becomes vital and operative for the objects intended, and to this end is constantly passing to and fro, from one terminus to the other of the entire line of road constructed so that it has no such local position or *situs* in the city of Davenport, as to entitle said city more than any other town or city through which it passes, to tax the same for municipal purposes. In this respect the claim or right of each town to or through, which the rolling stock might go or pass, would be alike equal and valid. But that all of them should exercise this right to tax the same property, would be too unreasonable a proposition to merit

discussion.   We give but little importance to the fact that the company keep their principal office of business in Davenport.   It is claimed, to be sure, by some sort of fiction in law, that the personal residence of the company must, on that account, be in that place, which necessarily fixes there the *situs* of their personal property.

Now, if it was allowable to indulge in this presumption against known· facts, still, it would not relieve us of the difficulty.

The facts agreed on in this case are, that the rolling stock of the company is in a constant state of transition, having no local existence in one place more than another; that it is employed to operate the whole length of the road 170 miles long, only two miles of which are within the limits of Davenport, so that, as a matter of fact, it is for a very large proportion of the time elsewhere than in the city of Davenport.   It is therefore difficult to see in what sense it is to be considered, as having its local existence on the two miles in Davenport to the exclusion of the 168 miles outside of that city.   For these reasons, without stating others in effect, the Court below said this rolling stock could not be taxed for city purposes.   But that these reasons did not apply to the road bed and depot grounds and buildings which had a permanent place in the city, and therefore taxable.

We now propose to show that neither description of property, as such, is subject to taxation in the manner proposed for other and different reasons.   We premise, first, that this railroad enterprise, in all its appointments and accessories, as a great public improvement, is an entirety, that the two miles of road bed in Davenport is only one link of a long line stretching through several counties, indispensable to the whole; that the depot grounds in Davenport are only one ˙of a series of stations along the railway, each alike essential to the enterprise; that the

machine shops in the same place are as necessary for the successful operation of the road at Washington and Grinnell as in their own vicinity, and give value and efficiency to every part of the road. These facts, coupled with the shifting, transitory nature of the rolling stock, of which we have already spoken, show the impracticability of dividing up this peculiar kind of property into posts or stations, for the purpose of local taxation as by towns and counties so as to give to each municipality its due proportion of the revenue, and at the same time be just towards the corporation.

Hence, the Legislature, with a wisdom that is "*first pure, then peaceable, gentle and easy to be entreated,*" thought it best, in order to reduce this difficulty to a level with the demands of the constitution (which requires the property of corporations, for pecuniary profit, to be taxed), to adopt a different method of taxation from that which is prescribed for other property, namely, that of taxing the property of railway companies through the shares of the stockholders. This was accordingly done, as early as the year 1851, and continued to be the only method of taxation (with a slight modification made in 1858) down to April, 1862, when the Legislature changed the rule, to the effect following: That the Treasurer of the State should levy a tax of one per centum annually upon the gross receipts of said railways, without deduction of expenses, one-half of said taxes so levied and collected to be equally apportioned by the State Treasurer to the several counties through which the said roads respectively run, in proportion to the number of miles of main track of road in each county. The act further expressly provides that the tax therein provided for should be in lieu of all taxes, for any and all purposes, on the road bed, track, rolling stock and necessary buildings for operating the road. See Session Laws of 1862, page 227.

This law had taken effect and was in force when the

plaintiff in this case attempted to levy and collect a tax for revenue, on the personal and real estate of the defendant, in the same manner that it did on other property in the city. To do so is manifestly against the spirit, letter and intent of the above act. The question recurs, therefore, whence does the city derive its authority to exercise such a right. Taxation is not an original attribute of its own, but is a delegated power, and unless the law conferring its exercise for local purposes, contains an exception in its favor to tax this kind of property in the same manner that it does ordinary property, it must conform its action in the premises to the requirements of the general law. The doctrine upon this subject is, that municipal by-laws and ordinances must not be in conflict with the general law. Sedgwick on Statutory and Constitutional Law, p. 459, 474.

Usually, this rule is severely adhered to by the courts. In Connecticut, it was held that a by-law of a borough prohibiting the taking of oysters from the waters within the borough, during a certain period of the year, under a penalty therein prescribed, which the borough was authorized by its charter to make, is abrogated by a general law of the State, passed subsequent to the granting of the charter prohibiting the doing of the same act under a penalty prescribed in the statute, so far as such by-law prohibits the act whether such by-law was made before or after the passing of the general law; and therefore no action for the doing of the act, after the passing of such general law, can be maintained upon the by-law. *Southport* v. *Ogden*, 23 Conn., 128.

The truth is, taxation is a great governmental attribute, emanating alone from the controlling power of the State, and cannot be interfered with by the local authorities.

Yet, whilst the Legislature may distribute the exercise of this power among the counties, towns and school districts, for certain defined and local purposes, they, on the

other hand, are bound to use it in the mode and according to the rules and regulations prescribed for its exercise in the general law; unless some exceptions or departures therefrom are authorized, either in the law conferring the power, or in the Constitution, which is not pretended in this case.

Again, it is no less competent for the Legislature, in its discretion, to vary the rule or method of taxation in respect to different descriptions of property, than it is to exempt one class altogether and tax others. Upon this subject the Constitution is silent, and one is no greater stretch of power than the other. ·

In 1851, the General Assembly of the State conferred upon the city of Davenport the power to levy and collect taxes upon all taxable property within the city, as revenue, we suppose for municipal purposes, although that is not stated in the law. At the same session of the Legislature a general revenue law was passed, exempting some, and subjecting other classes of property to taxation. In regard to the property of corporations for pecuniary profit, the same law, section 452, Code of 1851, makes a special rule for taxing the same, not applicable to other property. There being no exceptions to the contrary, this rule was alike binding upon all the authorities of the State. They could no more disregard its provisions, than the one in relation to the exemption of property.

We need not determine whether the city of Davenport could or could not have levied and collected a tax through the shares of the stockholders of said road, under this law, for the reason that no question arises under the same in this case. It is now repealed, and in doing so, the Legislature has not only ordained an entirely new rule for taxing this description of property, but has taken even from the counties all power to tax the property of railway companies for any purpose whatever, and confines the exercise

The City of Davenport v. The Mississippi and Missouri Railroad Company.

of the power to one of the State officers, who is authorized to levy a tax of one per cent upon the gross receipts of the company, in lieu of the property itself, which, in effect, meets the demands of the Constitution.

Again, under this law, it is to be levied and collected for two objects only, namely, for State and county purposes, and for no other; and this is agreeable to the 7th section of the 7th article of the new Constitution, which reads as follows:

"Every law which imposes, continues, or revives a tax, shall distinctly state the tax, and the object to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

Now, upon what principle, in the face of this clause of the Constitution, and the law just referred to, passed in conformity thereto, can the plaintiff levy and collect a tax upon the property of the defendant, not only in a different mode than that prescribed, but for an object not contemplated by or specified in the law? Certainly none whatever.

The revenue law, in respect to counties, confers upon them the power to levy and collect upon all taxable property a certain per centum for county purposes, in like manner as it does the city of Davenport. But will any one say, on that account, the counties may disregard the law referred to, regulating the manner of taxing railroad property? If not, we ask upon what higher or better ground do the towns of the State stand, that they may do so? We think none.

The true doctrine is, that the powers of both are in subordination to the general law of the State, as it respects the matter of taxation; subject to be enlarged, diminished, or taken away altogether. It seems that the Legislature has deemed it expedient to reserve to the State the exclusive right to levy and collect taxes upon railroad property; and

when collected to apply it to two objects only, namely, for State and county purposes; and it is expressly stated that the tax of one per cent therein provided for, should be in lieu of all taxes, *for any and all purposes,* on the road bed, track, rolling stock and necessary buildings for operating the road. This language is broad enough to cover towns, and too plain to be mistaken. By the terms of the law they are excluded from sharing any portion of this tax; it may be because the Legislature supposed they would receive an equivalent therefor, and the benefits and advantages of the road. At all events, inasmuch as the Legislature, in obedience to the mandate of the Constitution, has limited the tax on this kind of property to two objects only, and that that of revenue for city purposes is not one of them, it follows that the plaintiff has no right to levy a tax even upon the gross receipts of the defendant, much less in the manner which it has proposed to do in the case at bar. If the law denying to towns and cities the benefit of such a tax, is unwise, the corrective is with the Legislature, and not with this Court.

What we have thus far said, has exclusive reference to taxes for revenue purposes, and does not apply to another class of special charges or assessments, which cities are frequently authorized in their charters to make against particular pieces of property for sidewalks or other improvements made in front of the same, intended mainly for the local advantage of the property itself, rather than the convenience of the public. Between this special police power and that of taxation for revenue, the courts have recognized a clear distinction, as involving in their exercise essentially different attributes or principles, the one being an ordinary tax for defraying the expenses of the municipal government, and the general improvement thereof, whilst the other is a special imposition or liability arising out of the benefit conferred upon the property assessed.

Hence, in obedience to this distinction, courts have held, that churches and other property, exempt from taxes under the revenue laws, were, nevertheless, chargeable with their special assessment for sidewalks, &c.    On this subject, we refer to the following authorities: *McBride* v. *The City of Chicago*, 22 Ill., 573; *City of Peoria* v. *Kidder*, 25 Id., 351; *Lefevere* v. *Mayor of Detroit*, 2 Mich., 586; *The City of Baltimore* v. *The Society for Establishing Useful Manufactures*, 4 Zabriskie, 386; *The Mayor of Baltimore* v. *Green Mount Cemetery*, 7 Md., 517; *In the matter of the application of the Mayor of New York for the relaying and improving a part of Nassau street, in said city*, 11 Johns., 77.

The same principle or right to make these special assessments for sidewalks, was recognized by the Court in the case of *The Burlington and Missouri River Railroad Company* v. *Spearman*, as city collector of Mount Pleasant.    In that case it was held that the plaintiff was bound to pay, or that their depot grounds were liable to pay for sidewalks constructed adjoining the same.    Whatever else was said on the subject of taxation, must be considered as referring to this class of special taxes.    If, however, there is language susceptible of a wider range, the same is a mere dictum, having neither the authority or quality of precedent.

It is suggested that the act of April, 1862, authorizing a tax upon the gross receipts of the railroad company, is unconstitutional: *first*, because not upon the property, and, *secondly*, because it is not uniform.

In principle, the tax upon the gross receipts, and one upon the shares of the stockholders, will not differ.    Yet we have several times held, that it was competent for the Legislature to authorize the latter to be levied. *Faxton* v. *McCash*, 12 Iowa, 527; *City of Davenport et al.* v. *The Mississippi and Missouri R. R. Company*, 12 Iowa, 527; *Tallman* v. *Treasurer of Butler County*, 12 Iowa, 531.

Either of these methods of taxation is virtually the same

as taxing the property itself. It accomplishes the same purpose, subjects the owners thereof to the same burden, and raises, perhaps, about the same amount of revenue.

As to the second objection, that the law being of a general nature, and not having a uniform operation, the same is very well answered by the reasoning in the case of *McCormick* v. *Rusch*, 15 Iowa, 127.

Judgment affirmed.

COLE, J.—I concur fully in the conclusions reached in the foregoing opinion, by Mr. Justice LOWE, but, in the view which I take of the case, it is not necessary to determine the question as to the constitutionality of the law of 1862. The idea that the burdens of taxation should be borne equally is so just that no court will suffer an infringement of it, when the power to enforce it is within reach; and while this applies with equal force to all natural persons, it seems to be especially and in high degree the duty of a court to see that artificial persons, deriving their vitality and existence from the government, should not be permitted to escape the burdens of taxation which are laid by that government upon natural persons. But the power of taxation rests with the legislative department of the government, and, until the Legislature authorizes the taxation, courts of law are powerless to enforce it.

The first inquiry, then, is, has the Legislature authorized the taxation of the property of the defendant, as shown in this case? The only laws of this State authorizing the taxation of railroad property, at any time, may be found in the Code of 1851, section 462; Laws of 1858, chapter 152; and Laws of 1862, chapter 173. The two former provide that property of corporations constructing railways, &c., shall be taxed through the shares of the stockholders, while the latter provides that such property shall be taxed one per cent on the gross receipts of said corporations. There

never has been any law in this State authorizing the taxation of the property of railroads, by an assessment of its value, or in any other manner than as above specified. The right to levy a tax must be based upon a law authorizing its levy. Upon this point the decisions of this court are uniform and consistent with both principle and authority. In *Tallman* v. *The Treasurer of Butler County*, 12 Iowa, 531, WRIGHT, J., delivering the opinion of the Court, says: "Taxation is an attribute of a sovereignty. The power to tax implies a corresponding power to apportion such tax as the Legislature shall deem proper. If it is unwisely (not unconstitutionally) exercised, the remedy is with the Legislature. No property can be taxed, however, until the law-making power authorizes and requires it to be done, and if it be done in one or a particular way, *that alone can be pursued, it cannot be done in another*. These are plain and fundamental principles governing the taxing power. * * * * The Legislature has declared that the property of certain corporations shall be taxed in a particular manner. What right have we, then, to say that this power shall be exercised in a different method? We know of none."

In the case of *The City of Davenport et al.* v. *The M. & M. R. R. Company*, 12 Iowa, 539 (which was decided below by the judge of the seventh judicial district, who is now a member of this Court), BALDWIN, C. J., delivering the opinion of the Court, says: "The Court below, in deciding this cause, properly remarked, that it is a familiar and fundamental principle in the laws of taxation, that no property can lawfully be taxed until the Legislature authorizes and requires it to be done, and when the act requires it to be done in a particular way, *that way, alone,* can be pursued." Another rule, equally well settled, is that municipal corporations must, in the exercise of their powers, conform to the general laws of the State, and can-

not act in conflict with them. It follows then, that, unless the taxes in this case were assessed in accordance with some law of the State, the plaintiff has no legal rights to enforce their collection. That they were not assessed, according to the law of 1862, is conceded, but it is claimed that law is unconstitutional. Suppose it is; of what avail can the maintenance of that position be to plaintiff? If it be held unconstitutional, and by reason of it, that the law of 1858 is still in force, the plaintiff is in no better situation, for there has been no compliance with that law in the assessment of the taxes sought to be collected. If it is claimed that the law of 1858, and the Code of 1851, are both repealed, then there is no law authorizing the levy of the tax; therefore, under the principles laid down in the cases cited, the plaintiff must fail.

The remedy for the plaintiff is with the Legislature, and until a law is passed authorizing the levy and collection of the taxes, it is useless to appeal to the court.

DILLON, J. — An opinion in this cause has been pronounced by Mr. Justice LOWE, and another by Mr. Justice COLE. The two remaining members of this court concur in the conclusions reached in those opinions so far as they hold the rolling stock of the defendant not to be liable, under the agreed statement of facts, to the municipal tax sought to be collected, but do not accede to the correctness of all the reasons advanced and all the grounds taken in those opinions, nor to the correctness of the view holding that the city could not levy the proposed tax upon the road bed, depot-grounds and buildings situate within the city.

Without reviewing the grounds assumed in those opinions, the writer is instructed to present simply the opinion which the two other members of the court entertain.

1st. *As to the right to tax the rolling stock:*

The city charter (art. 5, § 1), gives to the city of Daven-

,port "power and authority to levy and collect taxes upon all taxable property, real, personal and mixed *within* the city." Under the charter, situation or location, actual or constructive, "*within* the city," is an essential requisite of the right to tax. While *exemptions* from taxation are strictly construed, the *right* to tax, must be clearly made out. By the agreed statement of facts, the rolling stock is, in fact, no more situate within the city of Davenport than it is in the city of Muscatine, Iowa City and other places along the route of the road. These places would seem to have the same right to tax the rolling stock that the city of Davenport has, unless the fact that the latter place is the chief place of business of the company gives it the right and the exclusive right, to tax this species of property.

It is maintained by the city that it has the power to tax this property on the ground that the rolling stock is personal property, that the *residence* of the company is ·in Davenport, because that is its chief place of business, and that personal property wherever situate, is taxable where the owner *resides*.

If it be granted that rolling stock is personal property, within the meaning of the rule of law, that such property, for some purposes, follows the residence of its owner, yet it by no means follows that the *residence* of the company is "within the city" of Davenport, in such a sense as to give the rule application in the present instance. In legal contemplation, the corporation does not solely reside in Davenport, in consequence of that being its chief place of business. It is rather to be considered as residing in the counties and places through which the road passes, and in which it transacts its business. *Baldwin* v. *The Mississippi and Missouri River Railroad Company*, 15 Iowa, 518; *Richardson* v. *The Burlington and Missouri River Railroad Company*, 8 Id., 260.

This view does not exempt this property from *all* taxa-

tion. It only decides that *one* city, whose right to impose a tax is, under the agreed facts, no higher and no greater than the right of other cities on the road, cannot levy a local tax upon all of the rolling stock used to operate a road one hundred and seventy miles in length. If the city of Davenport should be allowed to levy such a tax, how upon the facts admitted in the record before us, could we deny the same right to Muscatine, Iowa City and Washington, and thus subject the property to quadruple taxation?

II. *As to the right to tax the real estate.*

The city charter, as we have seen, gives to the city "power and authority to levy and collect taxes upon *all taxable property*, real, personal and mixed, within the city."

The depot grounds, buildings and road bed of the defendant within the city are under the Revision (chapter 45), taxable property. The Revision, § 711, exempts certain property from taxation, not including the property of corporations for pecuniary profit, and the following section (§ 712) then declares that "*all other property, real and personal, within the State, is subject to taxation.*" The same section also subjects to taxation "*property belonging to any incorporated company.*" So the Constitution provides that the property of all such corporations shall be subject to taxation, the same as that of individuals. Art. 8, § 2.

The property of railroads then is *taxable* property. The charter of the city, giving the city the right to levy a tax upon "*all the taxable property within the city,*" we refer, of course to the *general laws* to ascertain what property is taxable; and when we make this reference, we find as above, that the property of the defendant is *taxable*, that is, subject to taxation, or in other words, not exempt therefrom.

It follows that the city, under its charter, has a right to levy and collect a tax on the property in question, unless this right has been taken away by some subsequent act of the Legislature, applicable to the city and to the municipal

tax sought to be levied. To establish the proposition that the power has been taken away, the learned counsel for the railroad company rely upon the 16th section of the act of April 16th, 1862, being "An act to amend chapter 45 of the Revision of 1860, in relation to revenue."

The act of 1862, above cited, provides for a tax of one per cent upon the gross receipts of every railroad company, which tax is declared to be "in lieu of all taxes, for any and all purposes, on the road bed, track, rolling stock and necessary buildings for operating the road." Acts of 1862, 227.

In our judgment, this act does not repeal or affect the right of the city (which, it has been shown, would otherwise exist) to levy and collect a tax from the property in question. In other words, the act has no application, and was not intended to have any, to the levy and collection of *municipal* taxes; but the act applies, and was intended to apply only to the kind of taxes therein provided for, viz., State and county taxes. Chapter 45 of the Revision, as well as the amendatory act of 1862, has no reference to cities, or to municipal taxation, and these acts do not conflict with the right of the city to levy and collect taxes under and by virtue of its charter and the powers thereby conferred; both can stand. The general language in the 16th section of the act of 1862, above quoted, means the same as if it read "in lieu of all taxes, for any and all purposes *within the contemplation* of this act," that is county' and State taxes. It means to declare that the county or State, the earnings *having been taxed*, cannot, for any purpose, levy and collect a tax on the road bed, depot-grounds, track, or rolling stock of the company.

The reasoning, if not the decision, in the case of *The Burlington and Missouri River Railroad Company* v. *Spearman, &c.*, 12 Iowa, 112, is pointedly in support of this view. Entertaining the opinion above expressed, that the

The City of Davenport v. The Mississippi and Missouri Railroad Company.

act of 1862 was not intended to, and does not apply to cities, it is not necessary to determine whether, under the Constitution (Art. 3, §§ 29, 30) and the decisions there under (9 Iowa, 30; id., 104; 10 id., 145), the rights of the city under its charter could be affected by the act of 1862, if such had been the intention of the Legislature.

If we are right in holding that the act of 1862 neither has, or was intended to have, any application to cities, this is a complete answer to the argument that even if the city has the right to tax railroad property, yet it must execute this right in the manner provided by the act, viz.: it must tax not the property, *eo nomine*, but the gross earnings.

Briefly stated, our argument is this: By the charter, the city has power to tax all taxable property within its limits. The depot-grounds, &c., are taxable property, and hence the city may levy a tax upon them. The act of 1862, does not touch this power of the city. The power of the city is the same as if this act had never been passed, and as there is no law providing that the city shall execute its power to tax, by taxing the gross earnings, it is not required to proceed in this way; and that, as the depot-grounds, &c., are taxable property, the city has the right to assess them as land, and levy a tax upon them, the same as it does upon the real estate of individuals.

It is proper to be added, that the cases before decided in this court, cited by Mr. Justice Cole, and those in other States, referred to by Mr. Justice Lowe, do not, in our opinion, conflict with the views above presented.

The counsel for the city has earnestly contended that the act of 1862 is unconstitutional, because it discriminates in favor of the property of railroads, by providing for this species of property a special mode of taxation instead of taxing it as all other property is taxed, by an assessment upon its *value*. The question under the peculiar language of our Constitution, is a grave one.

The counsel for the railroad company contends for the validity of the law.

If the tax upon the gross earnings should be made twenty per cent, instead of one per cent, the position of the defendant, with reference to the law, might change; and yet the legal question, which is one of *power* in the Legislature, would or might remain the same. As we hold that the act of 1862 has no application to the city of Davenport, it is not necessary, and it would be improper, to express an opinion upon its constitutional validity.

It is due to the counsel on both sides, whose arguments, so replete with research and learning, have been of great service to us in our investigations, to state that we are sensible that all the questions discussed have not been treated, but we have examined them so far as necessary, to arrive at what we deem the just decision of the question, presented by the agreed statement.

It is a matter of regret that the questions are so intricate and nicely balanced that we have not been able, after the most thorough discussion, to arrive at a conclusion in which all can unite.

These considerations, as well as those arising from the peculiar nature of railroad property, which makes it difficult. to apply to it laws, chiefly intended for and adapted to the taxation of ordinary property, demonstrate the necessity which exists that the General Assembly should, by wise, just, and well considered legislation, remove the subject, as to cities, from the perplexity and doubt by which it is now surrounded.

The result is, that all of the members of the Court concur (but on different grounds), in the opinion that the rolling stock is not, under the agreed facts, taxable by the city. The decision of the court below is, therefore, affirmed on this point.

As to the liability of the depot-grounds, buildings, &c.,

to the taxation of the city, the Court are equally divided, and hence, the judgment below, asserting such liability, stands affirmed by operation of law.

WRIGHT, Ch. J. concurs in the foregoing opinion of DIL-LON, J.