STATE OF MISSOURI, Respondent, *v.* ALBERT EBERT, Appellant.

1. *Constitution— Crimes—Court of Criminal Correction.*—The provisions of Gen. Stat. 1865, p. 895, § 15, providing that in the county of St. Louis all misdemeanors shall be proceeded with by information in the Court of Criminal Correction, are not in conflict with the provisions of sec. 24, art. 1, of the Constitution; neither does the law organizing the court violate that provision of the Constitution forbidding the General Assembly from passing special laws.

State v. Ebert.

2. *Crimes — Gaming — Criminal Practice.* — In a prosecution under the act, Gen. Stat. ch. 206, § 18, it is a sufficient defence that the premises occupied by the gambling device, and in which gambling was carried on, were not in the actual possession or control of the defendant, but were occupied by another person under a lease from defendant.

*Appeal from St. Louis Court of Criminal Correction.*

*Holliday* and *Sanders*, for appellant.

I. The provision is a violation of § 24, art. 1, of the Constitution of the State of Missouri, which provides that "no person can, for an indictable offence, be proceeded against criminally by information," &c. The question as to what is meant by an "indictable offence," in this section of the Constitution, has been fully established in this State by the decisions of this court in the three following cases: State v. Stein, 2 Mo. 67; State v. Ledford, 3 Mo. 101; and State v. Cowan, 29 Mo. 330.

II. The appellant insists that the provision quoted from the 15th section of the act establishing the St. Louis Court of Criminal Correction is in direct violation of § 27, art. 4, of the Constitution, which provides that "the General Assembly shall pass no special law for any case for which provision can be made by a general law," &c.

*Colcord*, for respondent.

I. The offence charged was a misdemeanor—R. C. 1865, p. 818, ch. 206, § 18.

II. The St. Louis Court of Criminal Correction has exclusive jurisdiction of all misdemeanors committed in St. Louis county—§ 10 of "An act to establish a Court of Criminal Correction in St. Louis county," R. C. 1865, p. 897.

III. No indictment can be found for any misdemeanor, under the laws of this State, committed in the county of St. Louis, but the same must be presented by information to the St. Louis Court of Criminal Correction—R. C. 1865, p. 897, § 15.

IV. The offence was proceeded against not at common law,

but under that statutory provision which creates the offence and prescribes the penalty—R. C. 1865, p. 818, ch. 206, § 18.

V. The Legislature has full power to establish tribunals inferior to the Supreme, District and Circuit Courts, for the trial of civil and criminal cases, and to direct their mode of proceeding—§ 1, art. 6, Constitution, R. C. 1865, p. 35.

VI. The Legislature had full power to provide, by special law, that misdemeanors should be proceeded against by information in the *county of St. Louis;* for by reason of existing differences the necessity of such provision extended *only* to St. Louis county, and not to any considerable portion of the State; wherefore a general law could not be made applicable—§ 27, art. 4, Const., R. C. 1865, p. 32.

VII. The fact that one David Foster held the premises, where the prohibited gaming table was alleged to have been set up, under and by virtue of a written lease, furnishes no excuse to the defendant Ebert; for such lease was wholly void as against defendant, by reason of David Foster, the lessee of Ebert, having set up and kept a *prohibited gaming* table or device upon and in the leased premises, and such lease could not therefore in any manner affect the right or power of defendant to fully control the premises, or afford any excuse for a want of proper control and care of the premises upon his part—R. C. 1865, p. 818, ch. 206, § 22.

WAGNER, Judge, delivered the opinion of the court.

Ebert, the appellant, was proceeded against by information, in the St. Louis Court of Criminal Correction, under the 18th section of chapter 206 of the General Statutes of this State, for permitting gaming tables to be set up and used for the purpose of gaming in a house to him belonging, or by him occupied, or of which he had at the time the possession or control. The jury found him guilty and assessed a fine of fifty dollars against him. A motion was made for a new trial, and also in arrest of judgment, which motions being overruled by the court, an appeal was taken and prosecuted. The grounds relied upon in this court for a reversal

of the judgment are that the fifteenth section of the act establishing the St. Louis Court of Criminal Correction, providing that offences of this nature shall be proceeded with by information instead of indictment in St. Louis county, is antagonistic to the twenty-fourth section of the first article of the State Constitution; and also that the court erred in giving and refusing instructions.

In the declaration of rights as contained in the Constitution, it is asserted that no person can, for an indictable offence, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service, in the time of public danger, or, by leave of court, for oppression or misdemeanor in office. Section 15, Gen. Stat., p. 897, declares that after the Court of Criminal Correction shall have been organized and opened for the transaction of business, " no indictment shall be found for any misdemeanor under the laws of this State, committed in the county of St. Louis, the punishment whereof is by fine, or imprisonment in the county jail, or both, and the same shall be presented to the St. Louis Court of Criminal Correction by information." The permitting a gaming table to be set up or used, for the purpose of gaming, by any person on premises belonging to him, or by him occupied, or of which he hath at the time possession or control, is by the general statutes a misdemeanor, punishable by fine, and an indictable offence.

It is now argued that the appellant was charged with an indictable offence, and that therefore he could not be prosecuted by information, and that it was incompetent for the Legislature to enact a law authorizing such a proceeding in St. Louis county.

In article 5 of the Amendments to the Constitution of the United States, it is said that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, &c. The same or a similar provision is to be found in most of the State Constitu-

tions; but this relates only to felonies and the higher grade of crimes, and has no application to misdemeanors. In an early case in this court, the question was discussed, and some doubt existed in the minds of the judges, as to what was the correct meaning of the words "indictable offence," as used in the clause of the Constitution; but it has long since become the settled doctrine that as to misdemeanors the Legislature may make them punishable either by indictment or information—State v. Ledford, 3 Mo. 73; State v. Cowan, 29 Mo. 330. There are some grades of offences which were indictable at common law, which are not so by statute. It having been found by experience more expedient and wise to proceed with those of a lesser character, usually coming within the denomination of misdemeanors, in a more summary and expeditious manner than by the cumbersome process of indictment.

The Legislature has always assumed thus to act, and we are unable to perceive any valid or plausible reason for disputing its authority. The bill of rights, in its inhibition against proceedings by information in indictable offences, does not undertake to define what constitutes an offence that is indictable. It was most assuredly not contemplated or intended to draw within the scope of its provisions all offences which were indictable at common law. The punishing of assaults and batteries and other misdemeanors, by information, was practised in England after the enactment of Magna Charta, which guarded the rights of Englishmen, and precluded their being prosecuted for certain high crimes and felonies otherwise than by presentment and indictment of a grand jury. The same course has been pursued in the American States since the adoption of their constitutions. There is another point which arises on the record which presents more difficulty, and that is, whether the act does not violate that clause in our Constitution which says "the General Assembly shall pass no special law for any case for which provision can be made by a general law; but shall pass general laws providing, so far as it may deem necessary, for the cases

State v. Ebert.

enumerated in this section, and for all other cases where a general law can be made applicable." The section in which this provision is found enumerates and places a prohibition on many acts which were theretofore subjects of special legislation. The law in question does not fall within the specific acts prohibited in the enumeration; but if obnoxious to objection, it must be on account of the words "all other cases where a general law can be made applicable."

The law establishes and organizes a new court, and confers special jurisdiction; this is within the undoubted province of legislative power.

To promote the ends which led to the creation of the new court, it was necessary to change and modify the remedy and forms of procedure in that class of cases coming within its jurisdiction. The court itself would not be necessary throughout the State, nor would a general law with like or similar provisions be applicable to the whole State. In a large city like St. Louis, where vice and crime spring up and multiply, it may be not only necessary, but even indispensable, for the public good, and to protect the public morals, to institute in case of misdemeanors a more summary mode and manner of proceeding than by the slow, expensive and cumbersome process of indictment. It is in the nature of a police or municipal regulation, and although highly necessary in one community, it may be wholly inapplicable to another.

The evidence on the trial, as preserved in the bill of exceptions, showed that the appellant was the lessee of the premises where the gaming was carried on, and that he had sub-let the same to one Foster, who had the exclusive possession and control of the rooms in which the gambling took place. The appellant asked the court to instruct the jury, that if they believed from the evidence that the premises described in the information in which the gambling was shown to have been done, or the gambling device was set up, was in the actual possession of Foster, and was occupied by Foster exclusively, and that appellant did not have the

actual possession thereof, he having leased or rented the same to Foster, then they should find for appellant. The court refused the instruction. The evidence did not show that the appellant had *any* direct knowledge that gaming was carried on at the premises, but it did show most conclusively that he had parted with the actual possession and all control over the same to Foster, who held by a good and subsisting lease. The instruction should have been given. We will say further that the evidence was not sufficient to justify the giving of the first instruction on the part of the State.

The judgment will be reversed and the cause remanded. The other judges concur.