THE STATE OF MISSOURI *ex rel.* JAMES A. HENDERSON, ON INFORMATION OF A. J. BAKER, ATTORNEY-GENERAL, Relator, *v.* THE COUNTY COURT OF BOONE COUNTY, Defendant.

PER CURIAM.

1. *Courts, judge of de facto —Judge of —Unlawful courts, acts of.*—Although a private individual without authority assumes the office of judge of a court which has a legal existence, yet its acts will not for that reason be void. But where there is no law authorizing such court to be held, and the judge assumes to create a court and preside over it, the tribunal so created and all its proceedings will be absolutely void.

2. *Probate Courts — Special acts creating, not unconstitutional.*— The act of April 1, 1872, creating the Probate Court of Boone county, is not obnoxious to section 27, article IV, of the State constitution, as being in the nature of a special enactment.

 1. The question whether or not "provision can be made by general law' for such a court, contemplated by that section, is, under a proper construction of the law, one for the Legislature to determine for itself.

 2. Aside from that section, the Legislature had the right to establish a Probate Court under the general power granted by section 1, article VI, of the State constitution, authorizing it "to establish inferior tribunals from time to time, as they might be needed." Under this latter section the Legislature is to judge of the time when the exigency demanding such a court may arise.

3. *Office without an incumbent, vacant.*— Under the act of April 1, 1872, the Probate Court of Boone county being begun June 1, 1872, but the election of its judge being postponed till the general election in the following November, there existed in the meantime a vacancy in the office of judge of that court which might be filled by appointment from the governor. An existing

office without an incumbent is vacant within the meaning of the constitution, and can be filled by the governor by appointment, unless an election or some other mode is plainly indicated.

### Per BLISS, Judge.

1. *Special legislation — Remedy.*—Section 27, article IV, of the State constitution, prohibiting special legislation, is directory, binding upon the conscience of legislators; but if disobeyed, the courts cannot furnish the remedy.

### Per WAGNER, Judge, dissenting.

1. *Boone Probate Court — Law creating, unconstitutional — Supreme Court bound to so declare.*— The act creating the Boone County Probate Court is in conflict with section 27, article IV, of the State constitution.

1. The act creating the St. Louis Court of Criminal Correction was upheld as being found to be in point of fact absolutely necessary in a large city like St. Louis (State v. Ebert, 40 Mo. 196), and the law authorizing cities, towns and villages to organize for school purposes, with special privileges, was held valid on the ground that the act was as general as was consistent with its scope and design, and was coextensive with the State. (State *ex rel.* Dome v. Wilcox, 45 Mo. 458.) That case decided that, had the act applied to certain specified towns and corporations, it would have been unconstitutional. But there was no necessity for the act creating the Probate Court of Boone county. There is no reason why courts for the administration of probate business should not be created under a general and uniform law. And a decision sustaining this special law would nullify the State constitution, and blot out one of its most important provisions.

2. It is not within the sole discretion of the Legislature to determine whether these special statutes are demanded. But it becomes the duty of the Supreme Court to decide, on a case presented, whether, under the existing facts, the laws are in conformity to the constitution. To leave the matter entirely within the discretion of the legislature would be to render the prohibition against special legislation practically a dead letter.

2. *Boone Probate Court, act touching—Section 1, article VI, of the constitution does not authorize.*— Section 1, article VI, of the State constitution does not authorize the passage of the act creating the Probate Court of Boone county. The effect of that section is simply to invest the Legislature with power to establish inferior courts, but their establishment must be in conformity to the constitutional requirement; *i. e.*, they must be authorized by a general law, and be uniform throughout the State.

For statement of case see dissenting opinion of Judge Wagner.

*P. E. Bland*, with *A. J. Baker*, for relator.

I. The act of the general assembly of April 1, 1872, creating the office of Probate Court for Boone and other counties, is not in violation of section 27, article IV, of the State constitution.

The general prohibition in the latter clause of said section has reference to the whole section, and embraces those subjects that are of the same general class as those already enumerated in the first clause, and comes within the doctrine of *ejusdem generis* as settled by this court in The City of St. Louis v. Laughlin, 49 Mo. 559. Without the application of this well-settled doctrine of *ejusdem generis* to the general clause of this section, the framers of the constitution would have committed the egregious folly of embodying in the fundamental law of the State a principle which would necessarily operate to create an iron conformity throughout the State, of relief as applied to circumstances and interests most widely dissimilar; and, without any possible good resulting therefrom, would have either deprived the people of the more wealthy and populous counties of the judicial facilities absolutely required by them, or required of more sparsely settled and poorer counties the burden of supporting a system of which they had no need.

II. The next question is, was there a vacancy in the office of probate judge in Boone county after the first of June, 1872? that being the day fixed by law for the act of April 1, 1872, to take effect. The act did not create a new office. It simply detached from the County Court of the counties named in the act a part of their jurisdiction as conferred by the General Statutes, to-wit: probate jurisdiction, and conferred it upon another officer to be styled the "judge of the probate court." After the act took effect there was an office of probate judge without any incumbent, and no such incumbent could be elected prior to the general election. The performance of very important duties required of that officer might be required *ad interim*. But the County Court, neither by its justices or clerk, could any longer perform these duties.

III. The third and last question is, was it the duty of the governor to fill this vacancy by appointment? This duty is made clear by section 8, article v, of the State constitution. (Wagn. Stat. 50.)

*H. C. Pierce* and *W. Gordon*, for defendant.

I. The act establishing Probate Courts in Boone and other counties is a special law, enacted in a case for which provision is required to be made by a general law. It is in violation of article IV, section 27, of the constitution of Missouri, and therefore null and void. (See 45 Mo. 464 ; 5 Ind. 557 ; 10 Ind. 72 ; 40 Mo. 186 ; 48 Mo. 468.)

II. Although the act aforesaid took effect from and after June 1, 1872, yet it is plain from section 21 of same act, that no court was contemplated to be held by virtue of said act until January, 1873. No vacancy, therefore, existed at the time the governor appointed said Henderson.

III. This is not a case in which the governor is authorized to fill a vacancy under article V, section 8, of the constitution of the State of Missouri. That section says "when any office shall become vacant," etc. In this case the office of probate judge was never filled under said act by election, and hence it could not have become vacant.

IV. The Boone County Court had jurisdiction of probate matters, even under said act, until January, 1873.

ADAMS, Judge, delivered the opinion of the court.

1. The first question presented by this record is the constitutionality of the act of the Legislature establishing a Probate Court for Boone county. It is urged that the Legislature is prohibited from passing such an act by the provisions of section 27 of article IV of the constitution of this State. The section referred to, after enumerating many cases where the Legislature is positively prohibited from passing a special law, contains this clause : "The general assembly shall pass no special law for any case for which provision can be made by a general law, but shall pass general laws providing, so far as it may deem necessary, for the cases enumerated in this section and for all other cases where a general law can be made applicable." The new constitution containing this section took effect the fourth day of July, 1865. Since that time the Legislature, by special acts, has created in various parts

of the State many Probate and Common Pleas Courts. These courts have been in full operation for many years, and have transacted a great deal of business, and are still transacting business. Large investments have been made, and titles to property acquired and transferred, on the faith that these courts were legally established, and that their acts and proceedings were valid. If they have no legal existence, all their acts and proceedings are *coram non judice* and absolutely void. A tribunal for the transaction of judicial business can only be created by the supreme power of the State. No person on his own motion has the power to erect himself into a court. He may without any authority assume the office of judge of a court which has a legal existence, and preside as such, and all the acts of a court presided over by him will be valid. But where there is no law authorizing such court to be held, and the judge assumes to create a court and preside over it, the tribunal so created and all its proceedings are absolutely void. Can the office of judge of a court be assumed where there is no such office and no such court in existence? Such a proposition seems to me to be wholly untenable.

Can there be such a thing as a *de facto* court where there is a rightful government? If the government itself is a usurpation, as long as such government lasts the courts established by it are *de facto* courts, because the only existing government is *de facto ;* and when the rightful government is restored, the acts of such courts, as a matter of necessity, must be held to be valid. That is not the case in a rightful government. The authority to establish the court must emanate from the supreme power, otherwise the court itself is an absolute nullity and all its proceedings utterly void. In the State of Maine a probate judge assumed to hold a court at a place where he was not authorized by law to hold this court, and even in such case the Supreme Court of that State held the acts of the court a nullity. (See 27 Me. 114.)

These observations belong to the cause, and are not made because I consider the act of the Legislature irreconcilable with the constitution, but to indicate the deep magnitude to the people, as well as to individuals, of the question presented by this record. In Illinois the Supreme Court of the State refrained from looking

into the constitutionality of certain acts of a local character on account of the long-continued practice of the Legislature and the far-spread ruin it would produce to declare them void. (See Johnson v. Joliet & Chicago R.R. Co., 23 Ill. 202.) We are not without authority in support of the constitutionality of this law. So far as legislative action can give sanction to such a law, it has received it from the uniform practice of the Legislature ever since the constitution was framed. It has also received the sanction of this court in the many cases which have been brought here from those courts by appeal and writ of error, in which solemn judgments have been pronounced without objection, and which would be void if the court of original jurisdiction had no legal existence. In the case of The State v. Ebert, 40 Mo. 186, this court sustained the act creating the St. Louis Court of Criminal Correction and providing for the trials of misdemeanors by information, on the ground that it was necessary in a large city like St. Louis. So in the case of The State ex rel. Dome v. Wilcox, 45 Mo. 458, the same question was raised and decided in the same way in regard to the statute authorizing cities, towns and villages to organize for school purposes. How was it any more necessary in these cases to resort to special laws than in the cases of Common Pleas Courts and Probate Courts? Either class of enactments might be supplied by general laws, but the special laws are deemed much better, and therefore are considered necessary. Who is to decide when such necessity arises? The word " necessary " admits of all degrees of comparison. But a special law is scarcely absolutely necessary in any case, as in almost every case the particular end in view might be attained by a general law. The Supreme Court of Indiana, in the case of Thomas v. Board of Commissioners, 5 Ind. 4, stood upon the superlative degree and required the strictest construction of a similar clause in the constitution of that State, and said that in no case could a special law be resorted to where a general law would cover the case. I cannot see the force of the reasoning of the Indiana court in this case, and indeed the authority of the case is very much shaken, if not entirely set aside, in a subsequent case, where an act creating a new judicial circuit was upheld. (See Stocking

v. The State, 7 Ind. 328.) It will be observed that the Indiana constitution, like our own, inhibited certain local and special acts of legislation, and then in a subsequent section (§ 23, art. ıv) it was provided that all laws should be general whenever a general law could be made applicable. In speaking of the law creating the judicial circuit, the court said : "This does not seem to us to be such a case, and even if we doubted we should be bound to throw the benefit of our doubt in favor of the constitutionality of the law."

If the court had been governed by the reasoning in the fifth volume, this law would have been set aside as unconstitutional, because there is no doubt the new circuit could have been provided for by framing a general law. Afterwards, in 1868, the Supreme Court of Indiana, in an able opinion delivered by Elliott, Judge, reviews the case in 5 Ind. and expressly overrules it. But who is to decide when a general or a special law will answer the best purpose? It strikes me that this rule, in reference to general or special laws, is laid down as a guide for the Legislature, and the Legislature is to judge of the necessity of the particular case. The Legislature is quite as able to do this as the courts. The Legislature must, in the first instance, exercise their discretion as to the necessity of a special instead of a general act. How can the courts control that discretion? If a discretion be conceded at all, in my judgment the courts have no right to control it.

It is agreed that there is no discretion in regard to the passage of certain enumerated laws. They are inhibited by the letter of the constitution. When the Legislature undertakes to pass these inhibited laws, it is the plain duty of the courts to declare them unconstitutional. But here we are asked to pronounce upon the necessity of a law, and whether it can be better supplied by a general law than a special act. This is the exercise of the discretion of the court to control the discretion of the Legislature. I am not satisfied that this can be done. In The State v. Hitchcock, 1 Kan. 178, it was held that their constitutional provision, that "in all cases where a general law can be made applicable, no special law shall be enacted," left a discretion with the Legislature to determine the cases in which special laws

should be passed, and this discretion could not be interfered with by the courts. This doctrine, it seems to me, is supported by reason and the weight of authority.

But there is another clause in our constitution which may be invoked to uphold the authority of the Legislature to pass this law. By section 1 of article VI it is provided that "the judicial power as to matters of law and equity shall be vested in a Supreme Court, in District Courts, in Circuit Courts, and in such other inferior tribunals as the general assembly may from time to time establish." Here the authority is expressly given without limitation to establish inferior tribunals "*from time to time.*" It is not intended that they should all be established at one session or by one act, but "from time to time," as they may be needed. Some counties may need a Common Pleas Court, a separate Probate Court, or a Criminal Court, while others are too sparsely settled to need them. Who is to judge of the time when the exigency arises? Is not this discretion expressly left to the general assembly by this clause of the constitution? How can the courts undertake to control this discretion? Whatever may be said in reference to other special laws, the power is necessarily implied, if not expressly given, by this clause of the constitution, to establish inferior tribunals by special acts. I feel satisfied that the act under consideration is not unconstitutional.

2. The next question is, was there such a vacancy in the office of judge of this court as to authorize the governor to exercise his power of appointment? The act vests the exclusive jurisdiction of probate matters in this court, and it took effect the first day of June, 1872, but postpones the election of a judge until the general election in November. Who is to transact probate business in the meantime, unless a judge be appointed to fill the vacancy? The language of the constitution is, "when any office shall become vacant," etc., the governor may fill the vacancy. This is a new office created by this act, and *ipso facto* becomes vacant in its creation.

An existing office without an incumbent is vacant within the meaning of the constitution, and can be filled by the governor by

appointment, unless an election or some other mode is plainly indicated. (See Stocking v. The State, 7 Ind. 326.)

In my opinion a judgment of ouster must be entered against the defendants.

### SEPARATE OPINION OF JUDGE BLISS.

In concurring with the result to which Judge Adams has arrived, I do not concur in all his views. It may or may not be that the proceedings of the several courts called into being in contravention of the constitutional clause under consideration would be held to have been void. That matter I have not specially considered, and it is unnecessary to express any opinion upon it. I should, however, imagine that a difference would be found between the acts of a court organized in good faith and under the forms of law, and which the Legislature had the power to organize, but failed to comply with a constitutional requirement in exercising the power, and of one that existed merely in usurpation and without color of legality. A doubt, however, upon this question would greatly increase my hesitation in giving an opinion that should affect the multitude of local courts called into being by special enactment.

As to the object of the provision against special legislation I entertain no doubt. I agree with Judge Wagner that its design was to stop just such legislation as the act organizing a Probate Court in Boone county, and other acts of a like nature. The evil is great, and especially when legislation gives diversity of jurisdictions in the several counties. It is an evil which has always been endured to some extent, but which has greatly increased since the constitutional provision designed to cure it. It would seem that our law-making body was unconscious of its obligation to conform its action to the requirements of, and respect the restrictions imposed by, the organic law.

But I am not satisfied that we have the power to remedy the evil. Some body or tribunal must decide in each case whether the object can be provided for by a general law. In some States, under a similar provision, it is held that the courts may pass upon this question, while in others the decision is referred to the Legis-

lature alone. When the prohibition is absolute it cannot be evaded, and should be enforced by both the Legislature and the judiciary. When it is limited and conditional, and upon a question upon which judgment must be exercised and an opinion formed, the argument is certainly plausible that the body called upon to act must exercise that judgment.

It is seven years since the constitution went into operation. During every session of the Legislature it has construed, and, as I understand it, violated, the provision under consideration. The people have acquiesced in the lawfulness of its action and conformed their public business to it; the courts have treated it as legal and obligatory; and thus a practical construction has been given to the clause which should have its weight, and, in a doubtful case, be decisive.

I must, therefore, treat the clause as directory, binding upon the conscience of legislators, but, if disobeyed, the courts cannot furnish the remedy.

### DISSENTING OPINION BY JUDGE WAGNER.

The Legislature passed an act, which was approved April 1, 1872, establishing Probate Courts in eight counties, the county of Boone being one of the number. The act was to take effect and go into operation on the first day of June next after its passage, and at the ensuing November election, judges for the respective courts were to be elected. No provision was made for filling the office of judge prior to the time designated for the election. Under these circumstances the governor deemed that there was a vacancy, and proceeded to fill the same by appointment. A judge was duly appointed and qualified in the county of Boone, who demanded of the County Court the books, papers, etc., belonging to the office of probate; but the County Court refused to deliver the same, and continued to exercise probate jurisdiction, denying that the probate judge appointed by the governor was a legal officer; and this proceeding was instituted to test their right to hold and retain the before-mentioned jurisdiction.

Two questions are presented by the record. The first is, whether the establishment of the court was constitutional; and the second

is, if constitutional, had the governor power to appoint? On the part of the County Court, it is contended that the law is invalid because it violates section 27, article IV, of the State constitution. That section, after specifically prohibiting the passage of certain acts, declares that the general assembly shall pass no special law for any case for which provision can be made by a general law; but shall pass general laws providing, so far as it may deem necessary, for the cases enumerated in the section, and for all other cases where a general law can be made applicable.

While this provision has incidentally been before this court on former occasions, it has never been presented in a shape requiring the same consideration that is here demanded. In arriving at a correct conclusion and making a construction, courts must look to the history of the times, and examine the state of things existing when the constitution was framed and adopted; to ascertain the old law, the mischief and the remedy.

When there was no restraint, special legislation was one of the great evils of the day. Aside from its vicious influence on the legislative body, it produced inextricable confusion in the business affairs of the community. Laws were diverse and contradictory in adjoining counties, and a person going from one county to another, before he could transact his business, had to familiarize himself with some special or local act. In nothing was this practice more strikingly exhibited than in the organization of local courts with special jurisdictions. In attending to a particular class of litigation in adjoining counties, resort would sometimes have to be had to a different character of court in each county. Inferior courts were established and multiplied in remote and sparsely-settled counties, where they were unnecessary and useless. It was to strike down this great mischief, and produce uniformity, that the provision was inserted in the constitution. By common consent it was regarded as one of the wisest features incorporated in that instrument. No one will dissent from the conclusion that the greatest harmony that can be attained in the judicial system is highly desirable. The injunction is that no special law shall be passed where a general law can be made applicable.

In the case of The State v. Ebert, 40 Mo. 186, we upheld the act creating the St. Louis Court of Criminal Correction and providing for the trials of misdemeanors by information, on the ground that it was necessary in a large city like St. Louis. The amount of crime and petty misdemeanors existing there made a demand for it. They required prompt and summary punishment, and the other courts were inadequate to furnish the proper remedy. But such a law would be unnecessary in other portions of the State, and would be inapplicable.

The question was again raised in The State ex rel. Dome v. Wilcox, 45 Mo. 458, where it was contended that the statute authorizing cities, towns and villages to organize for school purposes, with special privileges, was invalid because it was not general and applicable to all. But we decided that the law was as general as was consistent with its scope and design, and no law more general could be framed to effectuate the object in view. It was, however, distinctly announced that the special statutes referred to in the constitution were such as related to individuals or particular localities; and that, had the act applied to certain specified towns or corporations, it would have been in conflict with the organic law.

In Indiana, under a similar constitutional provision, the Legislature enacted a law authorizing the re-location of a county seat of justice, and, among other things, appointed commissioners to re-locate the same. The Supreme Court held the act clearly unconstitutional. The court, in their reasoning, say that it was very evident that to prohibit special legislation was a prominent object of the convention that framed the constitution, and that the members of that body intended to limit the action of the Legislature, relative to the enactment of local or special laws, in strict conformity to the manner therein prescribed. They then make the inquiry, can such a case as the one before them be made the subject of a general law? To which they respond: "The solution of that question is not difficult. It is not within the sphere of judicial action to point out the features of any law; that, indeed, would be treading upon legislative grounds. But the record presents a case — the re-location of a seat of justice.

To apply the law to the case before us is a proper exercise of a judicial power; and that being done, we do know that to such a case a general law can be aptly applied. Let any one at all acquainted with the forms of legislation attempt to draw up a general law on the subject, and he will soon find that the thing can certainly be done. The mere suggestion that probable inconvenience might arise in the execution of such a law, can have no weight against the manifest intent of the constitution." (Thomas v. Board of Commissioners, 5 Ind. 4.) In subsequent cases the court went even further in giving this clause in the constitution a strict construction.

Decisions from other States, where the same constitutional prohibition exists, might be cited, showing a uniform exposition in reference to the provision. The words in the constitution must be taken in their natural and ordinary meaning. Marshall, C. J., in relation to the constitution of the United States, says: "The framers of the constitution and the people who adopted it must be understood to have employed words in their natural sense, and to have intended what they said." (Gibbons v. Ogden, 9 Wheat. 188.)

Bronson, J., in The People v. Purdy, 2 Hill, 31, which was subsequently approved in the Court of Errors, and cited with marked approbation by the Court of Appeals in Newell v. The People, 3 Seld. 9, declares that "written constitutions will soon become of little value if their injunctions may be lightly overlooked, and the experiment of settling a boundary to power will prove a failure."

Again, in the same case in the Court of Errors, in adopting Judge Bronson's opinion, it is said: "If the courts venture to substitute for the clear language of the instrument their own notions of what it should have been, or was intended to be, there will be an end of written constitutions." (Purdy v. The People, 4 Hill, 384.)

In construing the language of the constitution, courts have nothing to do with the argument from inconvenience. Their sole duty is to declare, *ita lex scripta est* — thus saith the constitution. (21 Wend. 584.)

As the Legislature is prohibited from passing any special law in any case where provision can be made by a general law, the question is whether a general law could be made applicable. It seems to me that to state this question is to answer it in the affirmative.

The main principles of law governing probate matters are the same throughout the State. There is no reason why a uniform system of tribunals should not be established for the administration of that law. That there are different amounts of business to do in different counties is true, and the same thing may be said of the Circuit Court, but that furnishes no argument against a general law requiring uniformity. By reference to our legislative enactments it will be seen that these special courts have been instituted in some of the smallest counties in the State, where there was the least necessity for them. In the very act which we are now passing upon, one of the counties in which a special court is established is Maries, which is one of the least populous counties in the State. To say that a general law which is sufficient for most of the counties in the State cannot be made applicable to these counties, appears to me most singular. We know, as an historical fact, that for many years the State got along with a general system, and these special courts were almost unknown, and no evil was experienced in consequence thereof. If the system which previously obtained is defective it is susceptible of amendment, but the law must be general and uniform. Any one at all acquainted with drafting of bills or with legislative proceedings can readily see how easy it would be to frame a general law on this subject applicable to the whole State.

To sustain this law would, in my opinion, be to practically nullify the constitution and blot out one of its most important provisions. That it is the duty and province of the courts in this instance, as well as all others, to decide whether the law is in conformity with the constitution, I entertain no doubt. The case of The State v. Hitchcock, 1 Kan. 178, is the only authority I have been able to find which holds that the enactment of such laws is within the legislative discretion and cannot be controlled by the courts. The contrary view is held in all the States where they have similar

provisions. (*Ex parte* Pritz, 9 Iowa, 33 ; Davis v. Woolnough, *id*. 106 ; Hetherington v. Bissell *et al*., 10 Iowa, 147; Baker *et al*. v. Steamer Milwaukee, 14 Iowa, 217; McGregor v. Baylies, 19 Iowa, 46 ; Atkinson v. M. & C. R.R., 15 Ohio St. 35.) It seems to me that if the courts concede that the whole matter rests with the Legislature, the result will be a virtual abolition of this clause in the constitution. The prohibition against special legislation will be practically a dead letter. As it is the practice in the Legislature for the members to yield and grant any local measure asked by any representative in that body, it is only necessary to demand a particular enactment for a special purpose, and if there is no constitutional restraint, it is passed as a matter of course. The legislative discretion in such cases extends only to the representations of the member who is interested in the passage of the bill.

Nor do I think that any power is derived in support of this measure from that provision in the constitution which declares that the judicial power shall be vested in the Supreme Court, in Circuit Courts, and in such other inferior tribunals as the general assembly may from time to time establish. The effect of this provision is simply to invest the Legislature with power to establish inferior courts, but their establishment must be in conformity with the constitutional requirement ; they must be authorized by a general law, and be uniform throughout the State.

In my opinion, therefore, the act is clearly unconstitutional. Having arrived at this conclusion, I forbear discussing the second point raised by the record.