## STATE v. DANIELS, *Appellant.*

1. **Courts, Inferior.** A court is inferior to another under whose supervisory or appellate control it is placed; a court of limited jurisdiction is also inferior to a court of general jurisdiction. Limited jurisdiction extends only to certain specified causes; general, to a great variety of matters.

2. ———: CRIMINAL COURT OF THE SIXTH JUDICIAL CIRCUIT AND THE COUNTY OF JOHNSON, AN INFERIOR AND CONSTITUTIONAL COURT. Sec.

13, Art. 6, of the constitution of 1865, declared "that the circuit court shall have jurisdiction over all criminal cases, which shall not otherwise be provided for, by law." *Held*, that this section, by necessary implication, authorized the legislature to provide by law for taking from circuit courts jurisdiction over all criminal matters. *Held*, also, that Sec. 4, of the Schedule of the constitution of 1875, providing "that all courts organized and existing under the laws of the State, and not specially provided for in this constitution, shall continue to exist until otherwise provided for by law," must be regarded, till other provision is made, as imparting vitality to the criminal court of the Sixth Judicial Circuit and Johnson county, which was organized and existing at the time of the adoption of the constitution of 1875. *Held*, also, that Sec. 23, Art. 6, of the constitution of 1875, providing that circuit courts shall exercise superintending control over criminal courts, * * * in each county in their respective circuits, places the criminal court in question in the class of inferior courts which the General Assembly may establish in virtue of Sec. 1, Art. 6, of the constitution of 1865. *Held*, also, that the act of 1875, creating the court in question, was not obnoxious to that provision of the constitution of 1865, which prohibits the enactment of a special law when a general law could be made applicable; so held, on the ground that it was for the legislature to determine whether a necessity existed for this criminal judicial circuit, and did not exist for such circuits in other portions of the State.

3. ——— : ——— : CHANGE OF VENUE FROM. In the act establishing this court, it was provided that, "In all cases where a change of venue is granted from said criminal court on the ground of prejudice, or other disqualification of the judge of said court, the same shall be certified to the circuit court of the county in which said cause shall be pending," but there was in said act this further provision, "that all acts now in force, or that may hereafter be made, regulating the criminal practice and proceedings in courts of record, * * * shall govern the proceedings in said criminal court so far as the same may be applicable;" and by a subsequent act it was declared, "that hereafter no change of venue shall be awarded in any indictment or criminal prosecution in any circuit or criminal court in either of the following cases," the prejudice of the judge being one of the specified causes, and it was further declared that whenever in any cause an application should be made for a change of venue for any of the specified causes, the judge should make an order for the election of a special judge to try the case; *Held*, that the court was powerless to make any other order than one for the election of a special judge to try the cause.

4. ——— : WHAT, IT IS NOT NECESSARY THAT ITS RECORD SHOULD SHOW.

Where the record of an inferior court, which is, however, a court of record, and exercises its jurisdiction according to the course of the common law, recites that members of the bar, exceeding three in number, voted at the election of a special judge, the further recital that such members of the bar were duly licensed and enrolled is not required.

5. **Indictment**: OBJECTION TO, BASED UPON CAPTION OF.  An objection to an indictment that it purports to have been found in a court which never existed, based solely upon the name given to the court in the caption of the indictment, will not be regarded, where the record shows that the indictment was returned to a court of whose existence judicial notice can be taken.

6. **Practice—Supreme Court.**  An objection, where there is nothing either in the record proper, or in the bill of exceptions, upon which to base it, cannot be considered by this court.

7. **Change of Venue.**  The court to which a change of venue is granted, obtains jurisdiction of the cause when the order granting the same is made; and the direction to the clerk, contained in the order, that he transmit a transcript of the record improperly designating the court, to which the venue is ordered, will be rejected as surplusage.

*Appeal from the Criminal Court of the Sixth Judicial Circuit and the County of Johnson, in and for Pettis County.*— The case was tried before A. W. ROGERS, Esq., sitting as Special Judge.

*J. LaDue* for appellant.

1.   The act of the General Assembly of the State of Missouri, (Sess. Acts 1875, p. 42,) creating the criminal court of the Sixth Judicial Circuit, and the county of Johnson, is claimed to be unconstitutional and void, for the reason that it is not an inferior tribunal within the meaning of Sec. 1, Art. 6, of the Constitution of Missouri of 1865, under which said act was passed.  *In re* Booth & Rycraft, 3 Wis. 180 ; *McCormick v. Sullivan*, 10 Wheat. 199 ; 5 Cranch 185 ; *Meyers v. Kalkman*, 6 Cal. 582 ; 18 Ills. 361.

2.   The court, in which this case was tried below, or the act creating it, is also repugnant to Sec. 27 of Art. 4, of the Constitution of Missouri of 1865, in this, that it

State v. Daniels.

was created by a special act of the General Assembly of
the State of Missouri, when the same could and should
have been accomplished by general law.   The same neces-
sity exists throughout all the rural districts for the creation
of such a court, (if any,) that existed in the Sixth Judicial
Circuit, and which are unlike those counties where large
cities are located, such as St. Louis, Kansas City, St. Jo-
seph, &c.; and even the local criminal courts established
in those cities are made subordinate to and subjected to the
supervising control of the circuit courts.   *State v. Ebert*,
40 Mo. 186.

3.   The law, passed by the General Assembly, (Sess.
Acts of 1877, p. 357,) was only intended to apply to and
regulate changes of venue, in courts of general jurisdiction
or the circuit courts; and if it be construed to apply to
inferior courts, then the record must show that the special
judge was elected by the persons authorized by law to elect
such a judge, and that the judge, so elected, was possessed
of all the constitutional qualifications required; such court,
being inferior, everything must be proven, and nothing
taken as true by the doctrine of intendment or presump-
tion.   Sess. Acts of 1877, Sec. 2, pp. 357-8; Art. 6, Sec.
18, Constitution of 1865.

4.   The law of 1877 does not purport to apply to the
law providing for a change of venue, on account of the
prejudice or other inability to serve, of the judge of the
criminal court of the Sixth Judicial Circuit, and the county
of Johnson, and could not apply to it, if so intended by
the General Assembly.   A different mode is provided for
a change of venue, on account of the prejudice of the judge
of this court, by the special act creating it.   Sess. Acts of
1875, p. 42, Sec. 6; Sec. 53, Art. 4, of the Constitution of
1875; Sec. 34, Art. 4.   *Ib.*

5.   The indictment in this case is invalid, inasmuch as
it purports to have been found in a court which never ex-
isted, to-wit: the criminal court of Pettis county.   The
court, in which the case purports to have been tried, was

created by a special law, and specially named, and the venue should have been laid in said court.

ô. The order awarding the change of venue from Pettis to Johnson county, does not conform to the statute, which requires the order awarding the change of venue, to specify the grounds upon which it is based, and, also, to direct the clerk to make out and transmit to the clerk of the court, to which the venue is awarded, a transcript of the cause. Rev. Stat. 1865, Sec. 21, Ch. 212. These defects are not cured by an appearance where these papers were sent, as might be the case in a civil proceeding in a court possessed of general jurisdiction, and where the doctrine of intendment and presumption prevails. In a criminal case, the defendant stands upon his legal rights, is not presumed to waive anything, and, in a court of inferior jurisdiction, everything must be proven, and the record must show that the defendant has been awarded every legal right. *State v. Metzger*, 26 Mo. 65; *Schell v. Leland*, 45 Mo. 289; *State v. Lawrence*, 45 Mo. 492; *McCloon v. Beattie*, 46 Mo. 391; *Hansberger v. Pacific R. R. Co.*, 43 Mo. 200; *Bersch v. Schneider*, 27 Mo. 101; *Walker v. Turner*, 9 Wheat. 549; *Gibbs v. Shaw*, 17 Wis. 197.

7. The jury was improperly and illegally summoned. A special jury was summoned for the case before the December term of said court commenced, on or about November 30th, 1877, and before it was known whether the State or the defendant was ready for trial, and before the sheriff and his deputies took the requisite oath. Sec. 6, Ch. 80, Wag. Stat. 1872, p. 798. This being an inferior court, the record should show that the special panel of forty men, required in such cases, was procured strictly according to the mode provided by statute. *McGuire v. The People*, 2 Parker's Crim. Rep. 148.

*J. L. Smith*, Attorney-General, and *Geo. P. B. Jackson* for respondent.

1. The act creating the court, in which defendant was indicted, was not unconstitutional. Section one of article six of the constitution of 1865, as amended November 8, 1870, upon which appellant relies, provides that "the judicial power, as to matters of law and equi⁻⁻⁻, shall be vested in a Supreme Court, in circuit courts, and in such inferior tribunals as the General Assembly may, from time to time, establish." But section thirteen, of article six, of the constitution provides, that "the circuit court shall have jurisdiction over all criminal cases, which shall not be otherwise provided for by law," and clearly shows that it was the intention of the framers of the constitution to confer upon the General Assembly power to establish, by statutory enactment, such courts as it might deem necessary, which should have exclusive jurisdiction of criminal cases. Section three of the act establishing the court in question, provides that "said court shall have the same jurisdiction as the circuit court now has in criminal case, etc." Acts of 1875, p. 42. Circuit courts, are courts of general jurisdiction, except as otherwise provided by law. The term "general jurisdiction," is defined to be "that which extends to a great variety of matters." 1 Bouv. Law Dict., p. 769 (14th Ed.) The term "inferior jurisdiction," is defined to be "that which extends only to certain specified causes." 1 Bouv. Law Dict., p. 769, (14 Ed.) So that it clearly appears from said section three of said act of March 18, 1875, which limits the jurisdiction of said court to certain causes therein named, that the court established by said act is an "inferior tribunal," i. e. one whose jurisdiction "extends only to certain specified causes." When the determination of a question of fact is submitted to the Legislature, its action thereon is final. *State ex rel., etc. v. Boone County et al.*, 50 Mo. 317; *State ex rel., etc. v. Pinger*, 50 Mo. 486; *Hall v. Bray*, 51 Mo. 288; *State ex rel. v. County Court of New Madrid County*, 51 Mo. 82; *City of St. Louis v. Shields*, 62 Mo. 247; *Harper v. Jacobs*, 51 Mo. 296; *Smith v. Haworth,*

53 Mo. 88; *State v. Able*, (decided this term); *Brown v. Buzan*, 24 Ind. 194.

2.   And it is equally clear that the existence and validity of said court remained unaffected by the adoption of the constitution of 1875, as it is expressly provided in section four of the schedule to said instrument, that " all criminal courts, organized and existing under the law of this State, and not specially provided for in this constitution, shall continue to exist until otherwise provided by law." It will not be pretended that this court belongs to any of the classes "provided for in said constitution." In the language of this court in *ex parte Snyder*, 64 Mo. 58, the intention of said section four of said schedule was " to continue such criminal courts alone, as had an actual and not a mere potential existence." It is provided by section thirteen of said act of March 18, 1875, that a judge of said court should be appointed by the Governor, who should hold his office until the next general election. The next general election succeeding the going into effect of said act, was held on the first Tuesday after the first Monday in November, 1876.    (Wag. Stat., p. 565, Sec. 1.) The constitution of 1875 went into effect on the thirtieth day of November of that year, (Sec. 13 of Schedule,) so that the criminal court of the Sixth Judicial Circuit and the county of Johnson, "had an actual and not a mere potential existence" at that time, and is saved by said section four of the schedule. See also sections one, twenty-six and thirty-one, of article six of the constitution, and section one of schedule thereto.

3.   It does not appear, upon what state of facts, the objection, that the panel of forty men, from which the jury were finally chosen, were improperly summoned, is predicated. A paper is inserted in the transcript, which is neither a part of the record proper, nor has it been made such by bill of exceptions, nor does it appear to have either been filed or presented to the court below—and, therefore, this court cannot take notice of the same. *Sam-*

*uels v. State,* 3 Mo. 68; *State v. Treace, supra,* p. 124. But, even if it could, the objection comes too late now. Wag. Stat. p. 797, Sec. 3; *State v. Ross,* 29 Mo. 32; *Lisle v. State,* 6 Mo. 426; *People v. Coffman,* 24 Cal. 233; Proffatt on Jury Trial, § 198.

4. The law itself is a sufficient order for the transscript to be sent to the proper officer. Wag. Stat. 1099, Sec. 30. Jurisdiction was conferred by the order of the court changing the venue, and the filing of the papers in the court to which the venue had been changed, was only one of the necessary steps to be taken in the progress of the cause. *Henderson v. Henderson,* 55 Mo. 534, 544.

5. No omission or defective statement in the introductory clause of the indictment proper, will affect the validity or sufficiency of the indictment; it forms no part of the caption. Bishop on Crim. Prac. (2d Ed.,) §§ 662 & 668; Whart. on Crim. Law, (4th Ed.,) §§ 219 & 223; *State v. Freeman,* 21 Mo. 481; *Kirk v. State,* 6 Mo. 469; *McDonald v. State,* 8 Mo. 283; *State v. Ames,* 10 Mo. 744.

6. Defects in the caption, or even the omission of the caption, cannot be noticed on the hearing of a motion in arrest. *State v. Gilbert,* 13 Vt. 647; *State v. Nixon,* 18 Vt. 74; *State v. Thibeau,* 30 Vt. 100, 104.

7. Even if the caption was not of the record as above argued, but was the introduction to the indictment, the objection could not be urged now, for the supposed defect or imperfection does not tend to the prejudice of the substantial rights of the defendant upon the merits. Wag. Stat., 1090, Sec. 27.

NORTON, J.—The defendant was indicted for murder in the first degree, at the April term, 1877, of the criminal court of the Sixth Judicial Circuit and the county of Johnson, in and for the county of Pettis.

On the application of defendant, based on the prejudice of the inhabitants of Pettis county, a change of venue was awarded at the November term, 1877, of said court,

to the criminal court of the Sixth Judicial Circuit, and the county of Johnson, in and for Johnson county.

At the December term, 1877, of said court, defendant, having been duly arraigned, filed his affidavit, alleging that he could not have a fair trial on account of the prejudice of the judge, and praying for such order as he might be entitled to under the law.

The court, thereupon, ordered an election to be held for a special judge, as is provided in the act of 1877, page 357. This election was held, and resulted in the choice of A. W. Rogers, as such special judge, who, after taking the oath required by said statute, proceeded to preside at and conduct the trial. The result of the trial was a verdict of guilty of murder in the first degree. Motions for a new trial and in arrest of judgment having been made and overruled, defendant brings the cause here by appeal. The points relied upon for a reversal of the judgment are: That the act of the General Assembly, approved March 18th, 1875, Acts 1875, page 42, creating the criminal court for the Sixth Judicial Circuit and Johnson county, is unconstitutional; that the act of 1877, Acts 1877, page 357, authorizing the election of a special judge, is also unconstitutional; that the act of 1877, if constitutional, does not apply to the criminal court of the Sixth Judicial Circuit, and Johnson county, and does not repeal section 6, of the act of 1875, which declares that when a change of venue shall be granted because of the prejudice of the judge, it shall be to the circuit court of the county in which the cause is pending. It is argued that the criminal court created by the act of 1875, *supra*, is not an inferior court, and that the said act is, therefore, repugnant to section 1, article 6, of the constitution of 1865, which provides "that the judicial power shall be vested in a Supreme Court, in district courts, in circuit courts, and in such inferior tribunals as the General Assembly, may from time to time, establish."

It is manifest that, under this section, the Legislature

State v. Daniels.

could not establish other judicial tribunals, than those named, unless they were inferior to them. What tests are to be applied in determining the question of inferiority ? It may be solved by showing that the court is either placed under the supervisory or appellate control. of those named, or that the jurisdiction conferred upon it is limited and confined. Conceding that the act in question does not place the court which it creates under the supervisory control of the circuit court, and only allows appeals and writs of error to be prosecuted directly to the Supreme Court, yet it will still be an inferior tribunal if its jurisdiction is limited and inferior. General jurisdiction is that which extends to a great 'variety of matters. Limited jurisdiction, also called special and inferior, is that which extends only to certain specified causes : 1 Bouvier, (14 Ed.,) 769. The jurisdiction conferred upon the criminal court by the act of 1875, is of the latter class.

1. COURTS—INFE-RIOR

It may further be said that it was clearly contemplated by the 13th Sec., Art. 6, constitution 1865, that the Legislature might provide by law for taking from the circuit courts jurisdiction over all criminal matters. That section declares " that the circuit court shall have jurisdiction over all criminal cases which shall not be otherwise provided for by law." Criminal jurisdiction was thus conferred upon circuit courts, which they could exercise till deprived of it by legislative action. The act of 1875 creates a tribunal inferior in the limited jurisdiction conferred upon it; that jurisdiction extending only to criminal cases, which Sec. 13, *supra*, of the constitution, by necessary implication, authorized to be done. Besides this, if irregularities existed in the establishment of this court, or the validity of the act creating it is brought in doubt, these irregularities may be regarded as cured, and the doubt solved by the express recognition which this and all criminal courts have received in the constitution of 1875. It is provided in Sec. 4, of the schedule of that instrument, " that all courts organized and

2. ———: criminal court of the sixth judicial circuit, and the county of Johnson, an inferior and constitutional court.

existing under the laws of this State, and not specially
provided for in this constitution, shall continue to exist
until otherwise provided for by law."

The criminal court of the Sixth Judicial Circuit and
Johnson county being organized and existing at the
time of the adoption of the constitution, had vitality im-
parted to it till otherwise provided, and may be said to live
by virtue of the organic life given it in the section quoted.

In case of *ex parte Snyder*, 64 Mo. 58, this court held
(Judge SHERWOOD delivering the opinion), in regard to Sec.
4, *supra*, " that in thus specifying and singling out such
criminal courts only as were organized and existing," the
framers of the constitution must be presumed to have had
in mind the whole subject, and to have intended to con-
tinue such criminal courts above as had an actual, and not
a potential existence. ˙ The debates of the convention will
show that this identical court was intended to be continued
by the framers of that instrument till the Legislature might
see fit to abolish it or otherwise provide; and to remove
all question in regard to the inferior character of such crim-
inal courts as were then organized and existing, it is provided
in Sec. 23, Art. 6, of the constitution of 1875, that the cir-
cuit court shall exercise superintending control over crimi-
nal courts, probate courts, county courts, municipal corpor-
ation courts, justices of the peace, and all inferior tribunals
in each county in their respective circuits.  This section,
which is materially variant from Sec. 21, Art. 6, of the con-
stitution of 1865, expressly places the criminal court in
question as well as all others existing, or which thereafter,
may be created, in the attitude pertaining to inferior tri-
bunals, and this, without regard to the act creating them,
so that the first test for determining the inferior character
of a court hereinbefore mentioned might well be applied in
this case.

The further objection, that the act of 1875 is obnox-
ious to that provision of the constitution of 1865, which
prohibits the enactment of a special law when a general

law could be made applicable, is answered by the reasoning of this court in the case of the *State v. Ebert*, 40 Mo. 186. It was a question of fact for the determination of the Legislature, whether in the four large and populous counties of Lafayette, Saline, Pettis and Johnson, comprising within their limits three cities of considerable population, a necessity existed for establishing a criminal judicial circuit which did not exist in other parts of the State; and with this Legislative discretion we have no right to interfere. This view is sustained by the fact that our present constitution, unlike the one it superseded, provides " that whether a general law could have been applicable is hereby declared to be a judicial question, and as such shall be judicially determined without regard to any legislative assertion upon the subject."

We are not asked to reconsider the views expressed in the case of the *State v. Able*, in regard to the constitutionality

3. ——: ——:
change of venue.

of the act of 1877, but it is insisted that the act does not apply to the criminal court of the Sixth Judicial Circuit, and county of Johnson, in so far as it relates to changes of venue and the election of a special judge. In support of this view, we have been cited to section 6, of the act of 1875, which provides : " In all cases where a change of venue is granted from said criminal court, on the ground of prejudice or other disqualifications of the judge of said court, the same shall be certified to the circuit court of the county in which said cause shall be pending."

It is claimed that, under this section, notwithstanding the act of 1877, *supra*, the cause should have been certified to the circuit court of Johnson county, and that the order for the election of a special judge was, therefore, unauthorized.

We do not perceive the force of this objection, for section 4 of the act of 1875 expressly provides, " that all acts now in force, or that may hereafter be enacted, regulating the criminal practice and proceedings in courts of

record,   \*   \*   \*   shall govern the proceedings in said criminal court so far as the same may be applicable." Now the act of 1877, was an act regulating criminal practice, the first section of which declares " that hereafter *no* change of venue shall be awarded in any indictment or criminal prosecution, in any circuit *or criminal* court, in either of the following cases," the prejudice of the judge being one of the specified causes. The second section provides that whenever in any cause an application shall be made for a change of venue, for any one or more of the specified causes, the judge shall make an order for the election of a special judge to try the case.

The 4th section expressly repeals sections 15 and 20, article 5, chapter 111, Wag. Stat., 1097, which authorized a change of venue on account of the prejudices or other disqualifications of the judge, and it also repeals all acts, or parts of acts, inconsistent with the provisions of the act.

It thus appears from the above that the criminal court, by the terms of the act creating it, was to be governed in the exercise of its jurisdiction, by the laws in force regulating criminal practice and proceedings, and it also appears that the act of 1877, is a law regulating criminal practice, and absolutely forbids a change of venue to be made in any criminal case, where the application for the change is founded on the prejudice or other disqualification of the judge, and commands that in all such cases the court shall order the election of a special judge to try the cause. The court below was powerless to make any other order than the one it made.

It is further objected that the record does not show that the judge who was elected was voted for by duly enrolled and licensed attorneys of this State, nor that he possessed the qualifications of a circuit judge, and as the criminal court is an inferior tribunal, nothing is to be presumed in favor of its jurisdiction. Conceding that inferior courts not being courts of record, nor exercising jurisdiction according to the

4. ———: what it is not necessary that its record should show.

course of the common law, everything necessary to confer jurisdiction must appear, and that nothing can be presumed or intended, we think the doctrine has no application here, because the criminal court in question is a court of record, so made by the act bringing it into being, and can and does exercise the jurisdiction conferred upon it according to the course of the common law. (*Johnson v. Beasly*, decided April term, 1877).

Besides this, the record recites substantially all that is requisite. It shows that the application was made by defendant, based on the prejudice of the judge; that thereupon an election of a special judge was ordered; that members of the bar, exceeding three in number, voted at the election; that it was conducted by the clerk of the court; that it resulted in the election of Rogers, who, before entering upon his duties, took and subscribed the required oath; that all this was done in the presence of the accused, and the general statement that the election was held according to the provisions of the law. It would seem that there is nothing left here for intendment, for it is difficult to conceive of a member of the bar of the court of the State who is not duly licensed and enrolled as such.

It is also objected that the indictment is invalid because it purports to have been found in a court which never 5. INDICTMENT: objection to, based existed, to-wit: the criminal court of Pettis upon caption of. county. This objection is based upon the name given to the court in the caption or introductory part of the indictment, which is as follows:

STATE OF MISSOURI, } ss.
  County of Pettis, }

In the criminal court of Missouri, Pettis county, Missouri:
    The Grand Jurors, &c.

This objection is answered by the case of the *State v. Freeman*, 21 Mo. 482, where it was held, Judge Leonard speaking for the court, "that the caption formed no part of the indictment, but it must appear on the face of the record while the cause is in the court where the indictment

was found, and from the transcript of the record after its removal into this court on appeal, or writ of error, not only that the indictment is sufficient in form and substance, but also that it was properly preferred by a lawful grand jury to a court having jurisdiction over the subject, and if all this does not appear, it is error of which the defendant may take advantage. But if it does appear it is sufficient, although the commencement of the indictment be wholly omitted. The following cases are to the same effect: *Kirk v. State*, 6 Mo. 469 ; *McDonald v. State*, 8 Mo. 283.

The record before us shows all these things, and that the indictment was returned into the criminal court of the Sixth Judicial Circuit and Johnson county, in and for Pettis county. This court will take judicial notice of the fact that Pettis county is one of the counties in the Sixth Judicial Circuit. The act of 1875, created a criminal judicial circuit, composed of the counties of the Sixth Judicial Circuit and the county of Johnson, and the court thus created, might properly be designated as the criminal court for each one of the counties embraced in such criminal judicial circuit.

It is further insisted that the judgment should be reversed, because the order changing the venue does not state 7. CHANGE OF VENUE. the ground upon which it was based, and because it directs the clerk to forward the transcript to the clerk of the criminal court of Johnson county, and that there is no such court. In supporting this point, we have been cited to the 21st Sec. Wag. Stat., 1097, which provides " that every order for the change of venue in a cause, shall state whether the same is made on the application of the party or on facts within the knowledge of the court or judge, and shall specify the cause of removal, and designate the county to which the case is removed." We think this section has been complied with. The petition and application of defendant for a change of venue, are set out in full in the record, and are referred to in the order making the change as a foundation for it. The county to

which the cause was removed, is also designated, to-wit: to the criminal court of the Sixth Judicial Circuit and Johnson county, within and for the body of the county of Johnson.

The direction contained in the order to the clerk that he transmit a transcript of the record to the clerk of the criminal court of Johnson county, may be regarded as mere surplusage, inasmuch as under Sec. 30, Wag. Stat., page 1099, it is made the duty of the clerk of the court making the order changing the venue, to make out a full and complete transcript of the record and proceedings, and transmit the same to the clerk of the court to which the removal is ordered. The criminal court of Johnson county obtained jurisdiction of the cause when the order granting the change was made, although it did not become possessed of the case till the transcript required by law to be made was filed. *Henderson v. Henderson*, 55 Mo. 544.

The point made by defendant as to the illegality in summoning the panel of 40 jurors from which a jury was to be chosen to try the case, cannot be considered here, for the reason that there is nothing either in the record proper or the bill of exceptions upon which to base it. It is true that there appears on the transcript on the third day of the trial, the names of forty men, accompanied by a certificate of the clerk stating that it was a true copy of a list of jurors furnished him by the sheriff, and summoned in the case of the *State v. Daniels*, and also accompanied by the certificate of the sheriff that he had furnished the list to the defendant on the first day of December, 1877. The trial had progressed two days before this paper was produced. It does not appear that it was offered as evidence, or that any action was asked to be taken in consequence of it, or that it was brought to the attention of the court for any purpose of the trial, nor is it in any manner referred to in the bill of exceptions.

Assuming, however, that it was offered as an objection.

6. PRACTICE—SUPREME COURT.

to the jury further proceeding in the trial of the cause, the court below would have been justified in overruling it under the decisions of this court in the *State v. Ross*, 29 Mo. 53; and *Lisle v. State*, 6 Mo. 426.

The only remaining ground brought to our attention is, that the prosecuting attorney, in his closing argument, used language and made statements of facts not warranted by the evidence to the prejudice of defendant. This position is not maintainable, for the reason that there is nothing whatever preserved in the bill of exceptions tending to show that such was the fact. We have not only carefully considered every point brought to our attention by defendant, but have looked through the record to see that in the trial and conviction of the accused all the forms of law have been complied with, and that he has had accorded to him all the rights to which he was entitled. The evidence in the case not being preserved, we might be excused from an examination of the instructions. We, however, find nothing in them to justify our interference or a disturbance of the judgment. The cause, so far as the record shows, was well and fairly tried, and the judgment, with the concurrence of the other judges, will be affirmed, except Judge HENRY, not sitting.

AFFIRMED.